396 N.E.2d 422 (1979)
STATE of Indiana ex rel. Indiana State Employees' Association, Incorporated, an Indiana Not-for-Profit Corporation, and Ray B. Merritt, Ervin Schwier, Richard H. Smart and Henry T. Starkey, Appellants (Plaintiffs below),
v.
Richard A. BOEHNING, Chairman of the Indiana State Highway Commission; Indiana State Highway Commission; Robert F. Marsh, Executive Director of the Indiana State Highway Commission; Leonard E. Lucas, District Engineer, La Porte District, Indiana State Highway Commission; George A. Brumbach, Chairman State Employees' Appeals Commission; State Employees' Appeals Commission and Alan J. Fromuth, Personnel Director, Department of Administration, Appellees (Defendants below).
No. 2-977A369.
Court of Appeals of Indiana, Second District.
November 5, 1979.
*423 Ronald E. Elberger, Indianapolis, for appellants.
Theodore L. Sendak, Atty. Gen., Victoria R. Van Duren, Deputy Atty. Gen., Indianapolis, for appellees.
BUCHANAN, Chief Judge.

CASE SUMMARY
Plaintiffs-Appellants State of Indiana ex rel. Indiana State Employees' Association, Incorporated and Ray B. Merritt, Ervin Schwier, Richard H. Smart, and Henry T. Starkey (Employees) appeal from a decision of the Marion Circuit Court denying them the right to an administrative due process hearing prior to their reclassification from salaried Engineer Assistants II to hourly laborers.
We reverse.

FACTS
The uncontradicted evidence indicates that on March 21, 1975, a memorandum[1] was issued by Appellee Leonard E. Lucas (Lucas), District Engineer of the LaPorte District, Indiana State Highway Commission, addressed to all interstate highway I-65 rest park attendants, including Employees who were classified as Engineer Assistants II, advising them that effective July 1, 1975, at their option, they could continue their employment as I-65 park attendants but with a reclassification of their positions from salary to an hourly wage with a consequent reduction in wage, accept transfer to an undetermined position elsewhere within the Rensselaer Subdistrict of the LaPorte District at an undetermined hourly wage, accept transfer to an undetermined position elsewhere in the LaPorte District at an undetermined salary classification,[2] or be terminated from employment *424 with the Indiana State Highway Commission. The reason stated for the change in status was "to conform with the procedure used by the State Highway Rest Parks throughout the State... ."
The Employees objected vigorously to their respective demotions and reclassifications and tried to obtain hearings to redress their grievances.
Effective July 1, 1975, the Employees were reclassified from a salary to an hourly wage, resulting in the following decrease in their respective total bi-weekly earnings:
a) Plaintiff Merritt was reclassified from the salaried position of Engineer Assistant II earning $274.00 bi-weekly to the position of Laborer, earning $3.17 per hour, or $253.60 bi-weekly, a reduction of $20.40 bi-weekly.
b) Plaintiff Schwier was reclassified from the salaried position of Engineer Assistant II earning $286.00 bi-weekly to the position of Laborer, earning $3.17 per hour, or $253.00 bi-weekly, a reduction of $32.40 bi-weekly.
c) Plaintiff Smart was reclassified from the salaried position of Engineer Assistant II earning $274.00 bi-weekly to the position of Laborer, earning $3.17 per hour, or $253.60 bi-weekly, a reduction of $20.40 bi-weekly.
d) Plaintiff Starkey was reclassified from the salaried position of Engineer Assistant II earning $262.00 bi-weekly to the position of Laborer, earning $3.17 per hour, or $253.60 bi-weekly, a reduction of $8.40 bi-weekly.
Having had their status of employment involuntarily changed the Employees, with the assistance of the Indiana State Employees Association, Inc., attempted to initiate administrative complaint procedures by reducing their respective grievances to writing and presenting their administrative complaint to defendant Lucas on July 10, 1975. In addition, the Employees also submitted their respective administrative complaints to defendant Alan J. Fromuth, Personnel Director, Department of Administration, who refused to review the complaints or render a decision as to their validity.
Finally, on July 15, 1975, copies of the Employees' respective administrative complaints were personally delivered to defendant Richard A. Boehning, Chairman of the Indiana State Highway Commission. He did not respond.
At no time relevant to these proceedings has there been any grievance procedure, rules or regulations promulgated, adopted, or implemented by the Commission regarding the complaints of these Employees. The Employees were afforded no administrative review and were denied a hearing on their objections to the demotions and reclassifications.
On November 10, 1975, the Employees instituted an action in the Marion Circuit Court seeking an order to mandate the Indiana State Highway Commission to review their complaints and conduct hearings and they are appealing the Court's decision denying their requested mandate.

ISSUES
We deem the issues on appeal to be as follows:
1. Whether Indiana statutory law affords these Employees an administrative due process hearing upon reclassification and demotion.
2. Whether the constitutional right of procedural due process of the Fourteenth Amendment applies to afford these Employees an administrative hearing.
3. Whether finding No. 8 is contrary to law.[3]

DECISION

ISSUE ONE  Does Indiana statutory law afford an administrative due process hearing to these Employees upon reclassification and demotion?
PARTIES' CONTENTIONS  The Employees contend that Indiana statutory law does provide them with the right to an administrative due process hearing.
*425 The State responds that the state statutes have no provisions providing for such a hearing.
CONCLUSION  Indiana statutory law does not specifically afford the Employees a right to a due process administrative hearing prior to reclassification.
To grapple with this question we must examine three statutes. The first is the Indiana State Highway Commission Bi-partisan Personnel Act (Bi-partisan Act), Ind. Code 8-13-1.5-1 to -8. It provides in parts relevant to this litigation:
8-13-1.5-5 Number of employees per day classification; adjustments by dismissals, demotions, suspensions or layoffs
Sec. 5. The Highway Commission shall not have more than sixty percent (60%) of the employees covered by this chapter, in each pay classification, and insofar as practicable, as adherents to any one (1) political party. To meet the requirements of this section, the Commission is hereby authorized to discharge at least twenty percent (20%) of all employees employed under the provisions of this chapter at the beginning of each Governor's administration. If, in the opinion of the Commission, rehiring of discharged employees is in the best interest of the Commission, such employees may be reinstated. Employees that are retained or employed under the provisions of this chapter may be dismissed, demoted, suspended or laid off because of their political affiliation in order to achieve the political balance required by this chapter. It is the intent of this chapter, however, to emphasize stability of government through continuity of employment and career opportunity.
8-13-1.5-6 Dismissal, demotion, suspension or lay-off for cause
Sec. 6. Any employee may be dismissed, demoted, suspended or laid off for cause. For the purpose of this chapter cause shall be any action or inaction of any employee that produces, incurs or results in the substantial diminution of the employee's ability or willingness to perform his duties, impairs the ability or willingness of any other employee of the institution or agency of state government to perform his duties or brings discredit upon the State of Indiana. Cause may include but shall not be limited to the following:
Intoxication on the job; physical or mental inability to perform the job requirements; personality characteristics which substantially limit the employee's or his fellow employee's ability to perform his duties, or which severely handicap the administration of the commission; and, action or inaction which severely limits or prohibits the implementation of administrative policies.
This statute has been the subject of abortive attention from the federal courts in a recent series of cases. Boehning v. Indiana State Employees Association, Inc. (1975), 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148; Indiana State Employees Association, Inc. v. Boehning, (7 Cir.1975), 511 F.2d 834, (D.C. 1973), 357 F. Supp. 1374.
The question considered was whether the Bi-partisan Act afforded a discharged employee an administrative hearing ... a question never answered because ultimately the United States Supreme Court decided state law should resolve the issue.
Subsequent to these cases, the Indiana Court of Appeals in Gardner v. Talley (1978), Ind. App., 373 N.E.2d 175 (transfer denied, June 16, 1978), concluded the Bi-partisan Act did not create a property interest in highway employees nor was a dismissed employee entitled to a hearing prior to his termination for cause. Judge Lybrook found any language to this effect to be "conspicuously lacking" in the Bi-partisan Act.
The Employees in this case are subject not only to the Bi-partisan Act but also to the Professional and Technical Employees Act (Career Act, Ind. Code 8-13-1-16). So we turn to its pertinent provisions to see if they bestow the right to a hearing. The Career Act elevates professionals and technicians to a special status and makes them impervious to the vagaries of politics, but *426 does not specifically or inferentially require a hearing prior to dismissal:
All employees of the Indiana State Highway Commission whose duties require specialized knowledge or skill, acquired by professional or technical education, training and experience, shall be employed solely on the basis of ability taking into account their qualifications to perform the duties of their respective positions. Such employees shall be employed by the commission regardless of any political affiliation and they shall not be appointed, promoted, reduced or removed or in any way favored or discriminated against because of their political affiliation, race, religion, color, sex, national origin or ancestry.
Such an employment system shall apply to employees in the following classifications:
.....
(3) ... Engineer Assistant II ...
Employees attempt to supplement the provisions of these two acts by reference to the "Indiana State Highway Employees Handbook" which was admitted into evidence at trial. On page 40 of the Handbook is a section entitled "Employee Right to Appeal", which provides:
It is a policy of the Highway Commission that an employee shall have the opportunity to present employment complaints to his or her immediate supervisor and, if necessary, to higher authority. If a complaint is not orally resolved with an immediate supervisor, a form, Employees Rights' of Appeal, may be obtained from the employee's personnel clerk. The procedures are outlined on the form.
Although the Employees attempted an administrative appeal under the Handbook procedure, the Highway Commission has not adopted any procedure for which an appeal can be initiated and the form which the Handbook refers to is non-existent. Moreover, there is no statutory requirement for any such appeal.
Finally, the Employees hopefully point to the Administrative Adjudication Act (AAA) § 4-22-1-1 to -30 as affording them the right to a hearing. There is no solace for them in this act either. Section 4-22-1-2 of the AAA provides in part:
"Administrative adjudication" means the administrative investigation, hearing and determination of any agency of issues or cases applicable to particular persons, excluding, however, ... the dismissal or discharge of an officer or employee by a superior officer, but including hearings on discharge or dismissal of an officer or employee for cause where the law authorizes or directs such hearing. (emphasis added.)
There simply is no specific provision for a hearing in any applicable Indiana statute for this class of employees (Engineer Assistants II), so we must consider whether constitutional due process requires such a hearing.

ISSUE TWO  Does the constitutional right of procedural due process of the Fourteenth Amendment require that the Employees be afforded an administrative hearing?
PARTIES' CONTENTIONS  The Employees contend they have a legitimate claim of entitlement to employment at the rank of Engineer Assistant II and are entitled to a hearing to protect this interest.
The State responds that the Employees have no right to hearing; no legitimate property interest was ever created.
CONCLUSION  The Employees do have a legitimate claim of entitlement to continued employment as Engineer Assistants II, and therefore have a right to an administrative due process hearing.
The hub around which the due process wheel turns is the existence of a property interest by the employee in his job.[4]
The United States Supreme Court has established that an employee of a state *427 governmental agency has a right to a hearing prior to termination of employment if the employee has a property interest in such employment. Bishop v. Wood (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684; Perry v. Sindermann (1972), 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; Board of Regents of State Colleges v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. However, the scope of these protected interests is limited:
The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

.....
The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests  property interests  may take many forms.
.....
To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 564-65, 576-77, 92 S.Ct. at 2705, 2708-09, 33 L.Ed.2d at 556-57, 560-61. (emphasis added)
The range of these interests may take various forms. It has been held:
that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. See Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435. Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, and college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, have interests in continued employment that are safeguarded by due process. Only last year, the Court held that this principle "proscribing summary dismissal from public employment without hearing or inquiry required by due process" also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment. Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418.
Town of Speedway v. Harris (1976), Ind. App., 346 N.E.2d 646, 650.
And this court has determined that a probationary fireman had a property interest in his job arising out of the Rules and Regulations of the Town of Speedway. Town of Speedway v. Harris, supra.
Do these Employees really have more than a mere expectation or need for employment at the rank of Engineer Assistant II? If they do "have a legitimate claim of entitlement" to continued employment in their present status, then they have a property interest blessed with due process protection.
State law may be the well spring from which a legitimate claim of entitlement may flow:

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. (emphasis added)
So now we must scrutinize applicable state law, to-wit, the Bi-partisan Act and the Career Act, to determine if they afford *428 Employees a legitimate entitlement to continued employment at their particular rank. We conclude these two statutes bestow such a property interest.
Construing them together, as we must,[5] we are immediately struck with the fact that the sole reason for which the Employees at the rank of Engineer Assistants II can be demoted is for cause.
The Bi-partisan Act (at Section 8-13-1.5-6) provides "any employee may be dismissed, demoted, suspended or laid off for cause." (emphasis added). While Section 8-13-1.5-5 of the Bi-partisan Act has been construed by Gardner v. Talley, supra, to create employment thereunder as employment at will, Section 8-13-1-16 of the Career Act stipulates that employees to which this section applies, including Engineer Assistants II, "shall be employed by the commission regardless of any political affiliation and they shall not be appointed, promoted, reduced or removed or in any way favored or discriminated against because of their political affiliation, race, religion, color, sex, national origin or ancestry."
Another section of the Bi-partisan Act, § 8-13-1.5-4, gives special protection to employees who are immune from political discharge:
The duties and powers of the executive director acting for the Highway Commission as they directly effect the operation of this chapter are as follows:
.....
(e) For the purpose of implementing subsection (a) of this section, the Executive Director shall direct the head of the Commission's Division of Personnel to certify in writing to the Commission and to the Indiana Legislative Council, on or before July 1 and January 1 of each calendar year, the number of employees of the commission other than engineers and other employees whose positions are given protection by statute from political discharge or demotion, indicating the political affiliation of each employee for the purpose of effecting the political balance of the Commission's staff as stipulated in Section 5 of this chapter. (emphasis added)
This protection would signify a legislative intent that these employees have greater job security than other employees of the State Highway Commission.[6]
The Career Act grants a six month probationary period for all classified employees. It implies that after the six month probationary period has ended, the employment status becomes permanent.[7] The Employees *429 in this case had been employed by the State Highway Commission for more than one year and therefore had completed their probationary term. The Indiana courts have clearly distinguished between probationary and permanent employees stating that unless specifically provided for by statute or rule or regulation, probationary employees are not entitled to a due process administrative hearing. Gansert v. Meeks (1979), Ind. App., 384 N.E.2d 1140; Town of Speedway v. Harris (1976), Ind. App., 346 N.E.2d 646.
The Career Act has another interesting feature. It provides for annual written appraisals of an employee's work to determine if the employee should remain in the position and thereby reasonably lends to the expectation that performance will be periodically evaluated and absent cause the employee will not be demoted or dismissed.[8]
So the combination of the two acts creates a special, preferred class of professional employees who can only be demoted or dismissed for cause. This would appear to give the Employees a legitimate claim of entitlement to continued employment in their present status ... a conclusion that is in keeping with Indiana case law establishing that if a demotion can be for cause only, there must be an administrative due process hearing to determine if there is sufficient cause for demotion. State ex rel. Warzyniak v. Grenchik (1978), Ind. App., 379 N.E.2d 997 (transfer denied March 26, 1979). See also Smulski v. Conley (1977, N.D.Ind.), 435 F. Supp. 770; Gary Teachers Union, Local No. 4 v. School City of Gary (1975), 165 Ind. App. 314, 332 N.E.2d 256. Cf. Gansert v. Meeks (1979), Ind. App., 384 N.E.2d 1140 (denial of a hearing for a dismissed probationary employee); Morris v. City of Kokomo (1978), Ind. App., 381 N.E.2d 510 (denial of a hearing prior to demotion, no statutory right, or property interest); Jenkins v. Hatcher (1975), 163 Ind. App. 95, 322 N.E.2d 117 (denial of a hearing prior to demotion, no statutory right), these cases, unlike our case, involve statutes which the court concluded did not create in the employee a reasonable expectation of continued employment (property interest), and therefore the procedural protection of a due process hearing was not afforded.
It follows that because no hearing was held in this case we must reverse. The Employees have a legitimate expectation of employment at the rank of Engineer Assistant II and can only be demoted for cause after a due process hearing.
Reversed and remanded for further proceedings consistent herewith.
SHIELDS, J., concurs.
SULLIVAN, J., concurs in result.
NOTES
[1] Excluding the caption and the letterhead of the Indiana State Highway Commission, the memorandum reads as follows:
 March 21, 1975
 DISTRICT MEMO # 79

TO: All I-65 Rest Park Attendants
FROM: L.E. Lucas, District Engineer
SUBJECT: Reassignment & Reclassification of Rest Park Attendants
To conform with the procedure used by State Highway Rest Parks throughout the State the following changes will be made at the two rest park facilities located on I-65 at the Rensselaer Sub-District.
1. The facility will be transferred from a District operation to the Rensselaer Sub-District effective July 1, 1975.
2. All rest park attendants will be classified as hourly personnel  laborers.
3. Attendants will have the following options:
(1) Continue as park attendants at a pay rate not to exceed Class "D" which is $3.17 per hour.
(2) Transfer to the Rensselaer Sub-District at an hourly classification agreeable to the Rensselaer Sub-District Superintendent.
(3) Transfer to a District function be it Maintenance, Construction, Traffic or Testing at a salary classification agreeable to the function head.
(4) If none of the above three options can be concluded, then termination of the services of the attendant can be anticipated.
Please be advised that the present policy on transportation to and from work will continue: attendants will furnish their own transportation.
 Very truly yours,
 /s/ L.E. LUCAS
 L.E. Lucas
 District Engineer

[2] The evidence taken at trial indicates that no salaried positions were available to the Employees.
[3] Because we reverse on other grounds we need not address this issue.
[4] A liberty interest will also confer a right to a due process hearing, but the Employees have not raised this issue.
[5] Schrenker v. Clifford (1979), Ind. App., 387 N.E.2d 59; Indiana Waste Systems, Inc. v. Board of Commissioners (1979), Ind. App., 389 N.E.2d 52; 2A Sutherland, Statutes and Statutory Construction § 51.03 (3d ed. C. Sands ed. 1973).
[6] In Gardner, the court in dicta recognized that an employee solely governed by the Bi-partisan Act is not afforded the same procedural protection as an employee also governed by the Career Act:

We find from a fair reading of the statutes [8-13-1.5-1 to 8-13-1.5-8] involved that it cannot be said that the legislature intended to create a property interest in continued employment. In fact, the statute specifically limits an employee's expectation of continued employment to the term of office of the governor of Indiana. This court cannot accept the contention of Talley that a property right exists, except for his removal for political reasons. Had the legislature intended to create a property interest the statute would have to be much more specific than the Act in question. The specificity demonstrated in other Acts is conspicuously lacking in the Bipartisan Personnel Act and we therefore hold that no property right was created by the Act. See IC 1971, 8-13-1-1 et seq., [Career Act] concerning professional and technical employees of the Indiana State Highway Commission, and IC 1971, 18-1-11-1 et seq., concerning firemen and policemen.
373 N.E.2d at 177-78.
[7] Ind. Code 8-13-1-16 provides in part:

All persons first employed in any of such classified positions shall be employed on a six [6] months probationary basis. After any such person has completed five [5] months of service, a written appraisal of his services shall be made by his immediate supervisor and submitted to the commission through the chief of the division of personnel for purpose of determining whether such person should continue his employment under the provisions of this act beyond the probationary period.
[8] Ind. Code 8-13-1-16 provides in part:

A written appraisal of the services of all technical and professional employees covered by this chapter shall be made annually by their immediate supervisors and submitted to the commission through the chief of the division of personnel for the purpose of determining whether such employees should be retained in their positions.