[Civ. No. 21825. Third Dist. Oct. 3, 1984.]

DAVID SCHULTZ, Plaintiff and Respondent, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Appellants.

**COUNSEL**

Donald L. Reidhaar, Christine Helwick and Edward M. Opton, Jr., for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard and Thomas C. Hughes III for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—In this case we hold, among other things, that the trial court improperly granted summary judgment requiring defendant Regents of the University of California (hereafter University) to provide plaintiff a hearing in connection with the reclassification of his job. We conclude plaintiff failed to show the job reclassification deprived him of a property interest sufficient to invoke federal constitutional guarantees of due process of law. In so holding we clarify our prior opinion in *Ng* v. *State Personnel Bd.* (1977) 68 Cal.App.3d 600 [137 Cal.Rptr. 387]. We also conclude that *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622], which sets forth a test for invocation of procedural due process rights under the state Constitution (where a statutory interest is subject to deprivation), should not be extended to this case, which implicates no statutory interest. Rather, we conclude *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] continues to define the circumstances in which procedural protections of due process will be afforded employees of public entities who can show no statutory interest subject to deprivation.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a cytotechnologist, is a permanent full-time employee of the University of California at Davis Medical Center. He had been employed since 1976 in the position of hospital laboratory technician III.

In June 1980 the personnel department at the medical center began a classification study of jobs in the hospital laboratory technician series. The purpose of such a study is to compare the duties and responsibilities of classified jobs with the duties and responsibilities of other classified jobs. Such studies occur periodically throughout the University to help assure equitable and consistent relationships among all job responsibilities and classifications. As a consequence of such a study, jobs may be classified upward or downward or reassigned outside an existing "series" (here the

hospital laboratory technician series). Plaintiff's job was one of 53 jobs studied.

In 1980, the personnel department recommended reclassification of approximately one-third of the positions in the hospital laboratory technician series, including that held by plaintiff. Plaintiff's job was to be reclassified from hospital laboratory technician III to hospital laboratory technician II.

Section 290.2 subdivision (b) of the University's Staff Personnel Policy 290 specifically provides that the procedures set forth in the policy shall be applicable to complaints regarding position classification. Staff Personnel Policy 290 generally provides that complaints about a job classification shall be submitted in writing to the personnel manager and thereafter, upon request, to the Chancellor "whose decision shall be final." No hearing is provided.[1]

Plaintiff requested a full hearing on the reclassification of his job. The request was denied, and petitioner ultimately appealed to the Chancellor, who denied his appeal.

After the reclassification, plaintiff continued to perform the same job he had previously done; his salary remained the same. The only effect of the reclassification was to "redline" plaintiff's salary—to freeze it at its then-current level until the salaries of others in the new classification rise to equal his. Plaintiff has conceded that the reclassification was not disciplinary in nature.

Plaintiff filed a petition for a writ of mandate in Sacramento County Superior Court alleging three causes of action and seeking (1) reinstatement as hospital laboratory technician III, and (2) reclassification as hospital laboratory technician IV. Plaintiff and defendant filed cross-motions for partial summary judgment on plaintiff's first cause of action, which alleged a denial of procedural due process of law.

The trial court granted plaintiff's motion for partial summary judgment on his first cause of action, finding that plaintiff has a property interest in his job, that such interest embraces his classification as hospital laboratory technician III, and that plaintiff was entitled to a full due process hearing on the reclassification of his position.

---

[1]Staff Personnel Policy 290 is to be compared with Staff Personnel Policy 280 governing "Employee Grievances," including demotion, dismissal, or suspension. The latter policy provides for full administrative hearings of employee grievances.

On appeal,[2] defendant contends that (1) reclassification did not deprive plaintiff of an interest protected by procedural due process; and (2) the record demonstrates no lack of procedural due process. We reach only the first of these contentions and reverse.

DISCUSSION

I

Before addressing plaintiff's contention he was constitutionally entitled to a full hearing, we examine whether any statute, University rule, or written policy specified plaintiff was entitled to the hearing he seeks.

University Staff Personnel Policy 280, governing "Employee Grievances," expressly provides for a full due process hearing for an employee subject to "demotion." Although plaintiff concedes his job was not reclassified as a punitive measure, he contends his job reclassification was a de facto "demotion."

■ However, we conclude plaintiff was not demoted. The University's personnel policies expressly define demotions and reclassifications differently.[3] Moreover, the difference between demotions and reclassifications is one of substance. When an employee is demoted, job classifications remain static and the employee travels downward on the fixed matrix of defined jobs. This downward movement creates the ready inference that the employee's performance has been less than satisfactory. And an inference of unsatisfactory performance may be a stigma that may burden the employee's ability to work in the future.

By way of contrast, the process of job reclassification undertaken by the University does not focus on the *performance* of individual employees. Rather, that process compares the prescribed *duties* of different jobs. The University's process of job reclassification does not permit a reasonable inference that an employee has performed his or her job in an unsatisfactory manner.

We conclude the reclassification of plaintiff's job was not a "demotion." Therefore, plaintiff was not entitled to review of the reclassification under

---

[2]After entry of summary judgment on the first cause of action, plaintiff dismissed the remaining causes of action without prejudice.

[3]Staff Personnel Policy 110 distinguishes between a "demotion" and a "downward reclassification" and defines each as follows: "*Demotion.* The change of an employee from one position to another position which is in a class having a lower salary range maximum is termed a demotion." "*Reclassification, Downward.* The change of the title of an employee's current position to a title of a different class having a lower salary range maximum is termed a downward reclassification."

Staff Personnel Policy 280. Staff Personnel Policy 290, which does not provide an adversary hearing, applied to plaintiff's grievance. Apart from Staff Personnel Policy 280, neither party has cited any statute or rule granting plaintiff a hearing on his grievance, nor are we aware of any.

## II

We next address plaintiff's contention the due process clause of the Fifth Amendment to the federal Constitution mandated that he be given a hearing.

## A

■ It is clear that a public employee has a number of qualitatively different protectable interests that entitle him or her to the protection of procedural due process of law under the Fifth and Fourteenth Amendments to the federal Constitution before a public employer may violate the interest. (See generally, Tribe, American Constitutional Law (1978) § 10-9, pp. 514-522.) "Under the due process guarantees of the federal Constitution . . . a public employee is entitled to due process upon termination from employment if either 'property' or 'liberty' interests are implicated. (*Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]; *Perry* v. *Sindermann* (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694]; *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) In addition, and without regard to the existence of a property or liberty interest, procedural and substantive safeguards attach to termination for reasons which deprive the employee of other constitutional rights, such as freedom of speech (e.g., *Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274 [50 L.Ed.2d 471, 97 S.Ct. 568])." (*Figueroa* v. *Housing Authority* (1982) 131 Cal.App.3d 528, 531 [182 Cal.Rptr. 497].)

In the instant case, plaintiff presented neither facts nor legal argument to the trial court suggesting that the reclassification of his job had affected any "liberty interest"[4] or that the reclassification had been undertaken as a reprisal for plaintiff's exercise of any constitutionally protected rights. Rather, the parties presented the case to the trial court as one involving the limited question of whether plaintiff had a property interest in his job classification sufficient to invoke procedural due process requirements under the doctrine of *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194. We limit our discussion of federal due process to the issue tendered to the trial court; i.e., whether plaintiff showed he had a sufficient property interest to invoke federal due process guarantees.

---

[4]See generally *Shepherd* v. *Jones* (1982) 136 Cal.App.3d 1049, 1060 [186 Cal.Rptr. 708].

■ The status of federal procedural due process was summarized by our Supreme Court in *Skelly* v. *State Personnel Bd.*, *supra*: "In *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701], the United States Supreme Court 'made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. [Fn. omitted.]' (*Id.*, at pp. 571-572 [33 L.Ed.2d at p. 557].) Rather, '[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.' (*Id.*, at p. 576 [33 L.Ed.2d at p. 560].)

"Expanding upon its explanation, the *Roth* court noted: 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

" 'Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' (*Id.*, at p. 577 [33 L.Ed.2d at p. 561].)

"Thus, when a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a property interest protected by due process. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 261-262 [25 L.Ed.2d 287, 295-296, 90 S.Ct. 1011]; see *Geneva Towers Tenants Org.* v. *Federated Mortgage Inv.* (9th Cir. 1974) 504 F.2d 483, 495-496 (Hufstedler, J. dissenting).)" (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at pp. 206-207; see *Logan* v. *Zimmerman Brush Co.* (1982) 455 U.S. 422, 430 [71 L.Ed.2d 265, 274, 102 S.Ct. 1148].)

In *Perry* v. *Sindermann* (1972) 408 U.S. 593 at page 601 [33 L.Ed.2d 570 at page 580, 92 S.Ct. 2694] the Supreme Court explained that, "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."

With this overview of federal due process, we turn to the facts and circumstances of plaintiff's employment as presented to the trial court.

## B

■ We first examine whether any statute, rule, or written policy gave plaintiff any "legally enforceable right" to expect that his job would not be reclassified in the unbridled discretion of the University. We are aware of no statute bearing on the question. Various of the University's Staff Personnel Policies describe position reclassifications. Since these policies expressly provide for job reclassifications without any limitation of the University's discretion, they show plaintiff had no reasonable expectation his job would not be reclassified as it was.

Plaintiff contends he can trace a property interest to Staff Personnel Policy 300.1, which provides: "Staff positions are classified on the basis of duties and responsibilities. Positions with similar duties and responsibilities are grouped together in the same class. Class specifications state the title, concept, examples of work, and minimum qualifications of each class."

Plaintiff argues, "When the University acts to reclassify an employee to another classification, the employee's expectation that he will continue in the class absent cause is certainly significantly affected."

However, Staff Personnel Policy 300.1 does not create an expectation that an employee will be continued in a classification absent "cause." The policy is simply descriptive: it merely defines the way positions are organized within the University. It cannot be reasonably construed as holding out any representation, express or implied, that any given employee may expect to occupy any position for any length of time or that an employee will continue in any class absent "cause." By plaintiff's logic, if University personnel policies simply described the manner of employment organization within the University, position by position, that description would create a legally enforceable expectation by each described employee that he or she could be terminated only for cause. That result would effectively overturn established law permitting termination in appropriate circumstances without cause of probationary employees who serve at the pleasure of the appointing power. (See, e.g., *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 782-783 [97 Cal.Rptr. 657, 489 P.2d 537]; *Johnston* v. *Trustees of Cal. State University & Colleges* (1984) 151 Cal.App.3d 1003, 1008-1010 [199 Cal.Rptr. 175]; *King* v. *Regents of University of California* (1982) 138 Cal.App.3d 812 [189 Cal.Rptr. 189].)

*Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168 [144 Cal.Rptr. 117] is readily distinguishable. There, the court held a permanent employee of the University was entitled to a hearing before being dismissed from employment. However, in *Mendoza,* the court grounded the

employee's property interest in a University rule explicitly providing a permanent employee could be *dismissed* only for cause. (P. 172.) Here, plaintiff is unable to cite an analogous rule protecting his job from reclassification. We conclude no statute, rule, or written policy furnished plaintiff an "entitlément" to remain in his job without reclassification of the position.

## C

In upholding plaintiff's claim to a due process hearing, the trial court relied upon this court's opinion in *Ng* v. *State Personnel Bd., supra,* 68 Cal.App.3d 600. We conclude *Ng* is distinguishable.

In *Ng* a permanent state civil service employee, in a position comparable to a school principal, was demoted to the position of elementary school teacher without the opportunity for a hearing. The stated reasons for the demotion were incompetence, inefficiency, inexcusable neglect of duty, and failure of good behavior. The plaintiff alleged a denial of due process. This court wrote that, "In our view the procedural due process doctrine enunciated in *Skelly* extends to demotions as well as dismissals. In a practical sense a permanent employee's property interest in continued employment embraces his current classification as well as his current salary. His property interest is damaged by demotion as well as dismissal. The latter deprives him of the entire interest, the former of part. In *Skelly* (15 Cal.3d at p. 203) the court pointed to the employee's right to an evidentiary hearing except as to minor discipline consisting of suspension of 10 days or less. The right to an evidentiary hearing extends equally to dismissals and demotions. (Gov. Code, § 19578.) The *Skelly* opinion (15 Cal.3d at pp. 207-208) places dismissal *and other disciplinary measures* within the ambit of the right to continued employment which forms a property interest evoking due process protection. Both conceptually and verbally, the *Skelly* due process principle embraces demotions as well as dismissals." (*Ng, supra,* 68 Cal.App.3d at p. 606; italics in original.)

*Ng* must be read in light of *Skelly*. Ng, like Skelly, was a permanent state civil service employee. The origin of their cognizable property interest is described in *Skelly* as follows: "The California Act endows state employees who attain permanent status with a . . . . property interest. Such employees may not be dismissed or subjected to other disciplinary measures unless facts exist constituting 'cause' for such discipline as defined in [Government Code] sections 19572 and 19573. In the absence of sufficient cause, the permanent employee has a statutory right to continued employment free of these punitive measures. ([Gov. Code], § 19500.) This statutory right constitutes 'a legitimate claim of entitlement' to a government benefit within the meaning of *Roth*. Therefore, the state must comply with procedural due

process requirements before it may deprive its permanent employee of this property interest by punitive action." (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at pp. 207-208.)

The provisions of the Government Code that protected Skelly and Ng, as state civil service employees, from dismissal or demotion absent cause are unavailable to plaintiff as an employee of the University. Employees of the University of California are exempt from state civil service pursuant to article VII, section 4, subdivision (h) of the California Constitution. Nor can plaintiff point to any analogous statute or rule that prohibited reclassification of his job absent "cause."[5] *Ng* is therefore inapposite.

### D

Plaintiff also contends he was entitled to a due process hearing because he has suffered a protectable monetary loss as a consequence of the reclassification. However, plaintiff's only loss was that of "step" increases due to his job being "redlined." We thus examine whether plaintiff has shown a "legitimate claim of entitlement" or "legally enforceable right" to the "step" increase he has lost, or whether he has shown only a "unilateral expectation," an "abstract need or desire." (*Skelly* v. *State Personnel Board*, *supra*, 15 Cal.3d at p. 206.) We conclude the latter is the case.

A party moving for summary judgment must support the motion with facts set forth in affidavits, declarations, admissions, answers to interrogatories or depositions or with facts of which the court may take judicial notice. (Code Civ. Proc., § 437c, subd. (a).) Summary judgment for plaintiff is proper only if the factual showing supporting the motion is sufficient to entitle plaintiff to judgment. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244], followed in *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 595-596 [125 Cal.Rptr. 557, 542 P.2d 981].) Here, plaintiff's factual showing was manifestly insufficient to support the summary judgment.

Plaintiff alleges in his declaration only that he has, in fact, lost "a salary increase which I would have received on July 15th if not for my reclassification to the position of Hospital Laboratory Technician II." Plaintiff did not state the basis for his belief that the increase would have been forthcoming; nowhere does he allege that his belief was anything more than a "unilateral expectation" or that he had a "legally enforceable right" to the increase premised upon some existing contract, rule or understanding which stems from an independent source. (*Perry* v. *Sindermann*, *supra*, 408 U.S.

---

[5]Moreover, as we have seen, the reclassification of plaintiff's job was not a disciplinary demotion.

at p. 601 [33 L.Ed.2d at p. 580]; *Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at pp. 206-207; see *Heyne* v. *Mabrey* (1978) 178 Ind.App. 610 [383 N.E.2d 464].)

On appeal, plaintiff asserts the step increase was allegedly "scheduled." However, plaintiff failed to present evidence to the trial court showing that the increase was promised by defendant or that there were any "mutually explicit understandings" (see *Perry* v. *Sindermann*, *supra*, 408 U.S. at p. 601 [33 L.Ed.2d at p. 580]) between the University and him respecting the step increase. (Compare *Bush* v. *California Conservation Corps.* (1982) 136 Cal.App.3d 194, 202-203 [185 Cal.Rptr. 892].)

E

Plaintiff relies upon several out-of-state cases which we find inapposite.

He first cites *Atwell* v. *Merit Systems Protection Bd.* (D.C.Cir. 1981) 670 F.2d 272, 286-287, which neither supports nor refutes his contention. In *Atwell* the court merely *assumed* that reductions in grade pursuant to re-classifications in the federal civil service system constituted the loss of a valuable property interest. (P. 286.) Because it felt the procedures used there were constitutionally adequate, the court rejected the claim of denial of due process. (*Ibid.*)

Plaintiff next cites *Brenna* v. *Southern Colorado State College* (10th Cir. 1978) 589 F.2d 475, a case where "there [was] no question on appeal that the procedures and hearings provided in the process of removing appellant satisfied the demands of procedural due process mandated by the Fourteenth Amendment." (P. 476.) The question there was one of substantive due process, i.e., whether the dismissal of a tenured professor was arbitrary or capricious.

*Butterworth* v. *Wiley* (1979) 123 Ariz. 419 [600 P.2d 32] involved a state employee whose job was reclassified from electronic data-processing systems analyst II to electronic data-processing operations supervisor I. (P. 32.) The Arizona Compilation of Rules and Regulations broadly defined "demotions" to cover the situation there presented; thus, the court concluded, due process appropriate to demotions was called for. The Arizona court suspected "that it might have been possible for the agency to have defined 'demotion' in such a manner that it would not have included employees whose job classifications were altered as a result of general position reallocation. The agency has not done this, however, but instead has defined 'demotion' so broadly that it must necessarily include the action taken with respect to the appellant." (P. 36) Here, as we have explained, "demotion"

and "reclassification, downward" are exclusively defined and do not mean the same thing. (See fn. 3, *ante.*)

Similarly, in *State* ex rel. *Indiana State Emp.* v. *Boehning* (1979) 182 Ind.App. 684 [396 N.E.2d 422], employees were *demoted* from "the salaried *position* of Engineer Assistant II . . . to the *position* of Laborer . . . ." (P. 424.) (Italics added.) The court held that due process required a hearing to determine if there was sufficient cause for the demotion. (P. 429.)

Finally, in *Dulmage* v. *City of Seattle* (1978) 19 Wn.App. 932 [578 P.2d 875] the court noted in dictum that a hearing should be required where contested factual issues arise as to whether the functions and duties of a newly created classified position are comparable to those of a previous position. (P. 876.) That issue is not before us. The instant case is not one in which reclassification has been used as a subterfuge for demotion by reducing an employee's pay or job responsibilities.

Here, plaintiff has shown no statute, rule or policy giving him a property interest in his job classification. Nor has he presented evidence of a contract or mutual "understanding" with the University protecting his job from reclassification. On the record before us we conclude no protectable property interest exists as a matter of law. (*Heyne* v. *Mabrey, supra,* 383 N.E.2d at p. 467; see *King* v. *Regents of University of California, supra,* 138 Cal.App.3d at pp. 815-816.) Therefore, he is not entitled to procedural due process of law under the federal Constitution. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 578 [33 L.Ed.2d 548, 561, 92 S.Ct. 2701].)

### III

We next examine plaintiff's claim to procedural due process under the California Constitution.[6]

■ In *People* v. *Ramirez, supra,* 25 Cal.3d 260, our Supreme Court made it clear that rules governing invocation of procedural due process rights under the state Constitution are not always the same as rules adopted by the United States Supreme Court for invocation of federal due process rights. (See generally Note, *People* v. *Ramirez: A New Liberty Interest Expands Due Process Protections* (1981) 69 Cal.L.Rev. 1073.) In *Ramirez,* the appellant had been placed upon outpatient status from the California Rehabilitation Center (C.R.C.) pursuant to Welfare and Institutions Code,

---

[6]Article I, section 7, subdivision (a), of the California Constitution provides in pertinent part: "A person may not be deprived of life, liberty, or property without due process of law . . . ."

section 3151. (25 Cal.3d at p. 264.) Two years later, while apparently still on parole from C.R.C., he pled guilty to disturbing the peace. The Director of Corrections found appellant "not a fit subject for confinement or treatment" at C.R.C. without giving appellant any opportunity to participate in the decision in any manner. (*Ibid.*) In allowing appellant certain due process rights short of a full hearing under article I, section 7, subdivision (a) and article I, section 15 of the California Constitution, our Supreme Court said: "[W]hen a person is deprived of a *statutorily conferred benefit,* due process analysis must start not with a judicial attempt to decide whether the statute has created an 'entitlement' that can be defined as 'liberty' or 'property,' but with an assessment of what procedural protections are constitutionally required in light of the governmental and private interests at stake." (*Ramirez, supra,* at p. 264, italics added.) "We therefore hold that the due process safeguards required for protection of an individual's *statutory interests* must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.]" (*Id.,* at p. 268, italics added.)

Because plaintiff has shown no statutory interest subject to deprivation, *Ramirez* does not expressly control plaintiff's due process rights. However, *Ramirez* is like a pebble recently dropped in a still pond: ripples are still emanating from it, and their ultimate effect is yet unknown. One key unsettled question is whether *Ramirez'* analysis will be applied to situations, such as that involved here, where no *statutory* right is at issue.[7] Since neither party to this appeal had cited *Ramirez,* we asked the parties to brief the issue.

---

[7]*Ramirez*'s right to be free of "arbitrary adjudicative procedures" has been mainly applied in criminal, juvenile, and mental health cases where an individual asserted a statutory right and faced possible loss of liberty in the proceeding. (See e.g., *In re Reed* (1983) 33 Cal.3d 914, 922, fn. 8 [191 Cal.Rptr. 658, 663 P.2d 216]; *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 434 [166 Cal.Rptr. 149, 613 P.2d 210]; *In re Winnetka V.* (1980) 28 Cal.3d 587, 594 [169 Cal.Rptr. 713, 620 P.2d 163]; *Garcia* v. *Superior Court* (1984) 156 Cal.App.3d 670, 675-676 [203 Cal.Rptr. 290]; *In re Head* (1983) 147 Cal.App.3d 1125, 1131-1132 [195 Cal.Rptr. 593]; *People* v. *Wolozon* (1982) 138 Cal.App.3d 456, 462 [188 Cal.Rptr. 35]; *Gibson* v. *Superior Court* (1982) 135 Cal.App.3d 774, 780 [185 Cal.Rptr. 741]; *People* v. *Rocha* (1982) 135 Cal.App.3d 590, 595 [186 Cal.Rptr. 132]; *Cramer* v. *Gillermina R.* (1981) 125 Cal.App.3d 380, 389 [178 Cal.Rptr. 69]; *In re Carr* (1981) 116 Cal.App.3d 962, 968 [172 Cal.Rptr. 417]; *People* v. *Lee* (1980) 110 Cal.App.3d 774, 780 [168 Cal.Rptr. 231].) However, in *Laird* v. *Workers' Comp. Appeals Bd.* (1983) 147 Cal.App.3d 198 at pages 202-203 [195 Cal.Rptr. 44], the court relied on *Ramirez* to conclude a disabled worker was denied due process when his statutory vocational rehabilitation benefits (Lab. Code, § 3207) were terminated without a hearing. And in *Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312, at page 317 [169 Cal.Rptr. 832], we relied on *Ramirez* to balance private and governmental interests involved in the termination from employment of a permanent civil service worker. (See also *John A.* v. *San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301, 314 [187 Cal.Rptr. 472, 654 P.2d 242] (dis. opn. of Mosk, J.).)

So far the California Supreme Court has not applied *Ramirez* to situations other than those where an individual faces the possible deprivation of a statutorily created interest. (See *In re Winnetka V., supra,* 28 Cal.3d 587; *Van Atta* v. *Scott, supra,* 27 Cal.3d 424.) Nonetheless, subsequent Supreme Court cases, in dicta, have read *Ramirez* broadly, as dispensing with the requirement that a property interest be shown to invoke due process protection. For example, in *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917], where California's "implied consent law" (Veh. Code, § 13353) was upheld against constitutional challenge, the court remarked: "[W]hile the United States Supreme Court has continued to hold that the application of federal procedural due process principles is wholly dependent upon the existence of a 'protected property or liberty interest' or 'entitlement' (see, e.g., *Connecticut Board of Pardons* v. *Dumschat* (1981) 452 U.S. 458 [69 L.Ed.2d 158, 101 S.Ct. 2460]), in *People* v. *Ramirez* (1979) 25 Cal.3d 260, 268 [158 Cal.Rptr. 316, 599 P.2d 622], our court recognized that under the California Constitution 'freedom from arbitrary adjudicative procedures is a substantive element of one's liberty' so that 'when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity.'" (*Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 81, fn. 12.)

Similarly, in *Van Atta* v. *Scott, supra,* 27 Cal.3d 424, where the court invalidated aspects of San Francisco's pretrial release and detention system, *Ramirez* is described as setting forth an independent test for all forms of due process under the state Constitution.[8]

Despite these broad characterizations of *Ramirez* in dicta in *Hernandez* and *Van Atta,* we are persuaded *Skelly* v. *State Personnel Bd., supra,* 15

---

[8]The court in *Van Atta* said: "In *People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622], this court held that the extent to which procedural due process relief is available under the California Constitution depends on a careful weighing of the private and governmental interests involved. The procedures that are constitutionally required are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decision-making process. (*Id.,* at pp. 268-269.) More specifically, 'identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' (*Id.,* at p. 269.)" (*Van Atta* v. *Scott, supra,* 27 Cal.3d at p. 434, fns. omitted.)

Cal.3d 194, has not been and should not be overruled.[9] If a public employee cannot show a statutory interest subject to deprivation, we believe the employee must still identify a property interest in order to invoke due process rights under the state Constitution. Some background is necessary.

Our Supreme Court devised the *Ramirez* due process test as an alternative to the federal test by which liberty interests were (or were not) protected under *Meachum* v. *Fano* (1976) 427 U.S. 215 [49 L.Ed.2d 451, 96 S.Ct. 2532] and *Montanye* v. *Haymes* (1976) 427 U.S. 236 [49 L.Ed.2d 466, 96 S.Ct. 2543]. Our court perceived that the federal test would permit the states, *by statute,* to define liberty interests out of the federal due process clause by specifying whether procedural protections would apply to a liberty interest and, if so, what they would be. (See *Ramirez, supra,* 25 Cal.3d at pp. 265-267; see generally Van Alstyne, *Cracks in "The New Property"*: *Adjudicative Due Process in the Administrative State* (1977) 62 Cornell L.Rev. 445.)

Ten years ago, there were indications the United States Supreme Court would treat property interests in the same way the court later treated liberty interests in *Meachum* and *Montanye*. In *Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633], a permanent federal civil service employee was fired after having made "reckless" charges that his superiors had taken a bribe. (416 U.S. at p. 137 [40 L.Ed.2d at pp. 23-24].) The Lloyd-La Follette Act (5 U.S.C. § 7501), provided a permanent employee could be "removed" from service " 'only for such cause as will promote the efficiency of the service.' " (*Id.,* at p. 140 [40 L.Ed.2d at p. 25].) Although the act gave employee Kennedy the right to notice of the charges and to respond in writing, the act did not require a full adversary hearing. (*Id.,* at pp. 137-142 [40 L.Ed.2d at pp. 24-26].) Kennedy sued, claiming due process entitled him to a full hearing. (416 U.S. at pp. 137-140 [40 L.Ed.2d at pp. 24-25].)

Rejecting Kennedy's claim to a due process hearing, Justice Rehnquist, with Chief Justice Burger and Justice Stewart concurring, wrote, "Here [Kennedy] did have a statutory expectancy that he not be removed other than for 'such cause as will promote the efficiency of [the] service.' But the very section of the statute which granted him that right, a right which had previously existed only by virtue of administrative regulation, expressly provided also for the procedure by which 'cause' was to be determined, and expressly omitted the procedural guarantees which appellee insists are mandated by the Constitution." (416 U.S. pp. 151-152 [40 L.Ed.2d at p. 32].)

---

[9]*Skelly* was clearly decided upon both state and federal constitutional grounds. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at pp. 205, 216-217.)

In a separate concurring opinion, Justice Powell, joined by Justice Blackmun, wrote,[10] "The plurality opinion evidently reasons that the nature of appellee's interest in continued federal employment is necessarily defined and limited by the statutory procedures for discharge and that the constitutional guarantee of procedural due process accords to appellee no procedural protections against arbitrary or erroneous discharge other than those expressly provided in the statute. The plurality would thus conclude that the statute governing federal employment determines not only the nature of appellee's property interest, but also the extent of the procedural protections to which he may lay claim. It seems to me that this approach is incompatible with the principles laid down in Roth and Sindermann. Indeed, it would lead directly to the conclusion that whatever the nature of an individual's statutorily created property interest, deprivation of that interest could be accomplished without notice or a hearing at any time. This view misconceives the origin of the right to procedural due process. That right is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. As our cases have consistently recognized, the adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms. [Citations.]" (416 U.S. at pp. 166-167 [40 L.Ed.2d at pp. 40-41]; fn. omitted.)

The plurality opinion in *Arnett* gave Justice Rehnquist's theory of statutorily defined due process, vis-à-vis property interests, its one shining moment on the stage of American law. A year after *Arnett,* in *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729], the court[11] concluded that since Ohio high school students had a legitimate claim of entitlement to a public education under Ohio statutes, Ohio could not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether misconduct had occurred. (419 U.S. at pp. 573-574 [42 L.Ed.2d at p. 734].) Although *Goss* cited *Arnett,* the reference was not to Justice Rehnquist's plurality opinion but rather to the opinions of Justices Powell, White and Marshall, who had dissented. (*Ibid.*)

More recently in *Vitek* v. *Jones* (1980) 445 U.S. 480 [63 L.Ed.2d 552, 100 S.Ct. 1254], the court gave clear indication it was abandoning the notion state statutes or regulations could define due process protections out of

---

[10]Justice White concurred in part and dissented in part. (416 U.S. at p. 171 [40 L.Ed.2d at p. 43].) Justices Marshall, Douglas and Brennan dissented. (416 U.S. at p. 206 [40 L.Ed.2d at p. 63].)

[11]The majority opinion was by Justice White. Justice Powell dissented in an opinion in which the Chief Justice and Justices Blackmun and Rehnquist joined.

existence even where a liberty interest was at stake. In *Vitek,* a Nebraska state prisoner challenged procedures by which he was transferred to a state hospital for treatment of a mental disease or defect. A state statute provided for transfer when a designated physician or psychologist found an inmate suffered from a mental disease or defect. (445 U.S. at p. 483, fn. 1 [63 L.Ed.2d at p. 559].) The state claimed the prisoner's liberty interest was satisfied once a physician or psychologist made the requisite statutory findings. 445 U.S. at pp. 489-490] [63 L.Ed.2d at p. 563].)

Writing for the majority, Justice White stated, "A majority of the Justices rejected an identical position in *Arnett* v. *Kennedy* . . . ." (445 U.S. at p. 490, fn. 6 [63 L.Ed.2d at p. 563].) The *Vitek* court held once the state granted the prisoner a right or expectation that adverse action would not be taken against him except upon the occurrence of specified behavior (i.e., the presence of mental disease or defect), the prisoner was entitled to minimum requirements of procedural due process appropriate for the circumstances. (445 U.S. at p. 490 [63 L.Ed.2d at p. 563].) "These minimum requirements being a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." (*Id.,* at p. 491 [63 L.Ed.2d at p. 563].)

Finally, in *Logan* v. *Zimmerman Brush Co., supra,* 455 U.S. 422 [71 L.Ed.2d 265], the court held a handicapped employee had a property right in a cause of action for discrimination granted by Illinois law. (455 U.S. at p. 429 [71 L.Ed.2d at p. 273].) In order to pursue the cause of action, plaintiff had to pursue administrative remedies before the Illinois Fair Employment Practices Commission, which, in turn, had to undertake certain acts within a specified time. (455 U.S. at p. 426 [71 L.Ed.2d at p. 271].) The commission failed to perform its duties within the prescribed time, effectively barring plaintiff's cause of action for discrimination. (*Id.,* at pp. 426-427 [71 L.Ed.2d at p. 272].)

The Illinois Supreme Court reasoned that because plaintiff's entitlement to a cause of action arose from the statute, the statute could also prescribe requisite procedures to be followed. (*Id.,* at pp. 431-432 [71 L.Ed.2d at p. 275].) "This analysis," wrote Justice Blackmun,[12] "we believe, misunderstands the nature of the Constitution's due process guarantee." (*Ibid.*) Following *Vitek,* Justice Blackmun held federal procedural requirements

---

[12]Joined by the Chief Justice and Justices Brennan, White, Marshall and Stevens.

were not diminished by the fact a state had specified its own procedures. (*Ibid.*) "Indeed, any other conclusion would allow the State to destroy at will virtually any state-created property interest." (*Ibid.*)

In light of *Goss* and *Logan,* we believe federal constitutional guarantees of procedural due process for the deprivation of property interests are in no present danger of being defined out of existence by state statutes or regulations. Indeed, *Vitek* suggests a majority of the highest federal court has come to recognize the dangers in *Meachum* and *Montanye* that led our Supreme Court to fashion the *Ramirez* test. In any event, we believe there is no present need to transport the *Ramirez* test from the arena of deprivation of statutory interests to the arena of nonstatutory disputes between public employers and employees.

In addition, we believe that the *Ramirez* test, at least as it has been characterized in its broadest form in *Van Atta* v. *Scott, supra,* 27 Cal.3d 424, (see fn. 8, *ante*), is not well suited for determining the due process rights of public employees. It is possible to read *Ramirez* as requiring application of its test whenever government acts so as to affect an individual adversely, in order to protect the right of the individual to be free from arbitrary administrative decisions. (*Ramirez, supra,* 25 Cal.3d at pp. 267-268; see generally Saphire, *Specifying Due Process Values*: *Toward a More Responsive Approach to Procedural Protection* (1978) 127 U.Pa.L.Rev. 111.) However, *Ramirez'* requirement of a statutorily conferred benefit limits the universe of potential due process claims: presumably not every citizen adversely affected by governmental action can assert due process rights; identification of a statutory benefit subject to deprivation is a prerequisite.

Just as an identifiable statutory benefit serves to limit the universe of potential due process claims under *Ramirez'* holding, so too the requirement of an identifiable property interest limits the class of public employees who can assert due process rights in connection with decisions made by their public employers which may affect them adversely. Public employees are adversely affected by countless daily decisions—from reassignment of job responsibilities to relocation of a soft drink machine—made by their public employers. The *Ramirez* due process test is flexible; it requires that a court of law balance private and governmental interests in order to determine what process is due the private citizen. (See *Ramirez, supra,* 25 Cal.3d at pp. 268-270.) If in the adjudication of disputes involving relations between public employees and employers we abandon the prerequisite property interest, and require the courts in each instance to fashion suitable procedures by applying the *Ramirez* balancing test of private and governmental interests, we believe the courts could well end up attempting to manage the bureaucracy of the State of California. The courts are in no position to

undertake that responsibility.[13]

We therefore conclude *Ramirez* does not apply to govern the due process rights of a public employee who has no statutory benefit subject to deprivation but who asserts that he or she has been treated unfairly by the public employer.[14] Rather, in the absence of a statutory benefit subject to deprivation, the employee must locate a property interest under *Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at pages 206-207.

## IV

■ ■ ■ ■ In the instant case, plaintiff has neither pleaded nor shown by affidavit any statutory interest or property interest subject to deprivation.[15] Consequently, neither plaintiff's pleading nor his affidavits refute the University's showing on their motion for summary judgment that plaintiff was not entitled to procedural due process of law in connection with the reclassification of his job. The University's motion for summary judgment should have been granted. (See *Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874-876 [191 Cal.Rptr. 619, 663 P.2d 177].)

The University requests that we order the trial court to enter summary judgment on its motion.[16] No appeal lies from an order denying a motion

[13]For this reason, and others, the theory of procedural fairness as a substantive right, announced in *Ramirez*, has not been without its critics. (See Simon, *Liberty and Property in the Supreme Court: A Defense of Roth and Perry* (1983) 71 Cal.L.Rev. 146, 184-187; Williams, *Liberty and Property: The Problem of Government Benefits* (1983) 12 J. Legal Stud. 3.)

[14]Even assuming arguendo the *Ramirez* test applied here, we would conclude plaintiff is not entitled to a hearing on the showing made in the trial court. The uncontradicted evidence on the motion for summary judgment was that, during fiscal year 1980-1981, the University of California studied the possible reclassification of over 4,700 university jobs. Of these, more than 3,600 were reclassified in some manner. Job reclassifications occur much more frequently than disciplinary actions. Uncontradicted evidence indicated further that if job reclassifications were to be accompanied by the same procedural safeguards that accompany disciplinary action, the result would hinder the University's ability to function smoothly and efficiently and to bring equity into its employment system.

When we apply the *Ramirez* balancing test (see *People* v. *Ramirez*, *supra*, 25 Cal.3d at p. 269), we conclude Staff Personnel Policy 290 sets forth appropriate procedures under the circumstances and a full adversarial hearing is not required. (See *id.* at pp. 275-276; see also *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 349 [47 L.Ed.2d 18, 42, 96 S.Ct. 893].)

[15]On a motion for summary judgment, "The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory. [Citation.]" (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) A defendant moving for summary judgment therefore has the burden of negating every alternative theory of liability presented by the pleadings. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 271, fn. 1 [179 Cal.Rptr. 30, 637 P.2d 266].) Here, neither the petition for writ of mandate nor plaintiff's affidavit alleges any *facts* (see Code Civ. Proc., § 425.10, subd. (a)) upon which either a statutory interest or a property interest may be found.

[16]Although the trial court initially entered a "partial" summary judgment on plaintiff's first cause of action, that cause of action is the only one surviving at present.

for summary judgment. (Code Civ. Proc., § 437c, subd. (*l*); see 4 Witkin, Cal. Procedure (1983 supp.) Proceedings Without Trial, § 195, p. 84.) However, in light of the University's clear right to judgment, and in the interest of judicial economy, we treat the appeal in part as a petition for writ of mandate and issue a peremptory writ. (See, e.g., *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 51 [162 Cal.Rptr. 786]; *Branham* v. *State Farm Mut. Auto Ins. Co.* (1975) 48 Cal.App.3d 27, 32 [121 Cal.Rptr. 304]; 6 Witkin, Cal. Procedure (1983 supp.) Appeal, § 51A, pp. 15-17; see also *Johnston* v. *Alexis* (1984) 153 Cal.App.3d 33, 44 [199 Cal.Rptr. 909].)

### DISPOSITION

The judgment is reversed. Let a peremptory writ of mandate issue commanding the trial court to grant appellant's motion for summary judgment.

Carr, J., concurred.

**BLEASE, Acting P. J.**—I concur in the judgment and opinion as to parts I, II and IV. I further agree that (as to part III) *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622] does not expressly control plaintiff's due process rights. So much resolves the issues tendered by the parties. Beyond that I see no reason to join an excursion through a due process garden grown thick with the underbrush of opinion.