[No. AO19931. First Dist., Div. Four. Oct. 14, 1983.]

In re JOEL HEAD et al., on Habeas Corpus.

COUNSEL

John K. Van de Kamp, Attorney General, Karl S. Mayer and Kenneth C. Young, Deputy Attorneys General, for Appellant.

Michael Satris, Donald Specter and Charles S. Bishop for Respondents.

OPINION

CALDECOTT, P. J.—This appeal involves three habeas corpus petitions alleging that the petitioners were excluded from the work furlough program established by Penal Code[1] sections 6260-6265 in violation of their constitutional right to due process. The pertinent facts leading to the appeal may be summarized as follows.

Petitioner, Joel Head, was an inmate at state prison, scheduled for release or parole on April 18, 1982. He was denied work furlough because he was classified as level III prisoner and that level III and IV[2] prisoners were

---

[1] Unless otherwise indicated, all further statutory references will be to the Penal Code.

[2] The classification levels are based on a point system derived from a number of factors, including background and behavior of the individual inmate.

automatically excluded from the program pursuant to the policy and guidelines of the Department of Corrections.[3] The denial occurred despite the fact that petitioner had remained disciplinary-free; received a number of laudatory reports from the San Quentin prison staff; had a job waiting for him outside; and had been accepted by the College of San Mateo for the 1982 spring semester.

Petitioner Winston Moton was a minimum security prisoner, level I, whose prison behavior was disciplinary-free. Moton, an above average carpenter for 10 years prior to his prison commitment, maintained his membership in the carpenters' union during his incarceration, was considered an "essential worker" in the institution and had a job promise upon his release. He was denied work furlough because his commitment offense involved the use of a firearm and two victims.

Petitioner Johnson Moore was a level II prisoner convicted of possession of controlled substances for sale. He was denied entry into the work furlough program because he was convicted of drug sales and used a firearm to assault a victim. The use of a firearm to assault a victim actually refers to Moore's conviction of possession of a firearm by an ex-felon. He too, was disciplinary-free and considered an "essential worker" in the institution.

The record further demonstrates that none of the petitioners was given a hearing or other opportunity to present his case prior to the decisions to deny him work furlough. Their only procedural protection in connection with that decision was a notice which explained the reasons for rejection and right to administrative appeal. The petitions, which were consolidated by the trial court upon the motion of the parties, alleged that the proceedings described above violated the due process rights of the petitioners and requested the issuance of writ of habeas corpus and declaratory relief. In a tentative decision filed on August 26, 1982, the trial court concluded that the proceedings referred to above were violative of the basic precepts of procedural due process and in an order issued on October 1, 1982, the trial court provided that in denying the opportunity to participate in the work furlough program the prison authorities must comply with the following procedural safeguards: (a) prisoners must be given a written statement of the grounds for their exclusion from the work furlough program; (b) prisoners must have access to the information used by the director in making his decision; (c) prisoners must be given notice of their right to respond to

---

[3]The department has since changed the rule that level III prisoners were ipso facto ineligible for the program. However, under the guidelines, level IV prisoners are still automatically disqualified for participating in the work furlough.

the decision; (d) prisoners must have the opportunity to make an oral response before a responsible official if the prisoner desires to do so; and, (e) prisoners must be given a written statement of the final decision and the reasons therefore.

The court further ordered that the prison authorities shall cease their policy to automatically exclude level IV inmates from work furlough considerations.

The present appeal by the People followed.

*The Actions at Bench Are Not Subject to Dismissal on the Basis of Mootness*

Review of the work furlough program begins shortly before a prisoner's scheduled release date. Section 6264 provides that the Department of Corrections shall review each inmate for work furlough consideration at least 120 days prior to his scheduled parole date. Prisoners accepted into the program are released exactly 90 days before their scheduled release date. (§ 6261, subd. (a).) Because of the short time span from a prisoner's denial of entry into the work furlough program and his release date, two of the three petitioners had been released on parole before the trial court's decision and the third one was also released at the time of this appeal. Based upon these facts appellant first contends that the actions at bench should have been dismissed as moot. We disagree.

 It was proper for the trial court to rule on the habeas corpus petitions despite the fact they were moot as to two of the petitioners. It is well settled that the court may decide a petition for a writ of habeas corpus even if it becomes moot during its pendency if it involves an issue of important public interest which is likely to recur. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Brindle* (1979) 91 Cal.App.3d 660, 670 [154 Cal.Rptr. 563].) There is no question that the issue here presented is likely to recur. Prisoners become eligible for consideration for the work furlough program daily. Also, the issue here involved is of important public interest because it affects the rights of procedural due process accorded to the prisoners, their liberty interest and the interests of society in protection from criminals and the criminal justice system as a whole. Since, due to the short time involved between a prisoner's denial of entry into the work furlough program and his release on parole, a court may never have the opportunity to rule on this important issue while the controversy is alive as to any given petitioner, it was a proper exercise of discretion by the trial court to decide the case despite its mootness with respect to two of the petitioners. For the very same reason it is appropriate for us to decide the appeal despite its mootness with respect to all petition-

ers. (See *Roe* v. *Wade* (1973) 410 U.S. 113, 125 [35 L.Ed.2d 147, 161, 93 S.Ct. 705]; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719 [94 Cal.Rptr. 602, 484 P.2d 578]; *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487].)

We also reject appellant's additional argument that the case should have been dismissed as an inappropriate class action. As pointed out earlier, petitioners, in effect, sought declaratory relief by way of a habeas corpus procedure. ■ It is well recognized that the habeas corpus procedure may be properly utilized to obtain a declaration of rights in the prevailing circumstances. (*In re Walters* (1975) 15 Cal.3d 738, 744 [13 Cal.Rptr. 663, 362 P.2d 487]; *In re Harrell* (1970) 2 Cal.3d 675, 682, 706 [87 Cal.Rptr. 504, 470 P.2d 640]; *In re Gonsalves* (1957) 48 Cal.2d 638, 639 [311 P.2d 483].)

*Due Process Protections Apply to Work Furlough Decisions*

■ Appellant contends that due process protections do not apply to work furlough decisions. We disagree. As stated in *People* v. *Ramirez* (1979) 25 Cal.3d 260, 266 [158 Cal.Rptr. 316, 599 P.2d 622], "Welfare and Institutions Code section 3053 requires that before the Director may exclude a person from the CRC, he must conclude 'that the person, because of *excessive criminality* or for other *relevant reason* is not a fit subject for confinement or treatment. . . .' (Italics added.) Although the words, 'other relevant reason˚ permits the Director broad discretion in making his decision, that discretion is not unlimited. Thus, since exclusion is conditioned by the terms of the statute, the patient-inmate's interest in remaining in the CRC is apparently within the scope of due process liberty and therefore warrants some degree of procedural protection." In the present case inmates are entitled to release under the work-furlough programs unless excluded under the terms of the statute (§ 6263, subd. (a)) thus, in the light of *Ramirez*, are entitled to some due process protection.

*The Review Procedures of the Department of Corrections Violate the Due Process Clause of the California Constitution*

The statutory scheme relative to the work furlough program may be outlined as follows. The Legislature found that prisons are overcrowded and it is desirable to put prisoners into a work furlough program shortly before their release date so they may begin to reintegrate into society. (§ 6260.) The Department of Corrections shall review *each inmate* for work furlough consideration at least 120 days prior to his scheduled parole date. (§ 6264.) To the extent that beds are available, all inmates shall be put in a work furlough program 90 days before their scheduled release, except those ex-

cluded under sections 6260-6265. (§ 6261, subd. (a).) Section 6263 states the criteria for exclusion of an inmate from the work furlough program. Accordingly, an inmate may be excluded if the Department of Corrections determines that an inmate would pose an unreasonable risk to the public, or if any one of the following factors exist (except in unusual circumstances, including, but not limited to, the remoteness in time of the commission of the offense): (1) conviction of a crime involving sex or arson; (2) history of forced escape or of drug use, sale, or addiction; (3) parole program or employment outside the area served by the work furlough facility; (4) history of serious institutional misconduct; (5) prior placement of inmate in protective housing unit within prison; or (6) more than one conviction of a crime of violence. (§ 6263, subd. (a).) The Department of Corrections, however, has discretion to deny placement even when the above provisions do not apply. (§ 6263, subd. (b).)

As appears above, the statutory scheme creates a right for inmates to be released 90 days early into a work furlough program, unless they should be denied placement by section 6263 or there is insufficient space to accommodate them. This right entails an extremely strong liberty interest for inmates. ■■■ We must balance the governmental interests and private interests at stake to determine if the Department of Corrections' review procedures comply with the due process clauses of the California Constitution (Cal. Const., art. I, § 7, subd. (a); *id.*, § 15).

■■ *People* v. *Ramirez, supra,* established a four-factor balancing test for deciding what process is due. Accordingly, "the dictates of due process generally requires consideration of: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269.)

■■ In applying the first factor to this case, it is clear that the reentry opportunities afforded by the work furlough are of utmost importance to the individual prisoner as it allows the prisoner freedom from the harsh and restrictive confinement of a state prison. It also will help the prisoner develop financial resources beyond his meager "gate money." Lastly, it allows the prisoner a gradual adjustment to the outside world thereby enhancing the chances of parole success. (See § 6260.)

The second *Ramirez* factor concerns the risk of an erroneous determination and the value of additional procedures. In this case, the risk of erroneous decision is great. As mentioned earlier, the inmates are not given notice that they are eligible for work furlough. They have no access to the information used by the department and thereby are unable to challenge the basis of the decision denying the work furlough.

The third consideration is the dignitary interest in informing the individuals of the nature of the action and enabling them to present their side of the story before a responsible governmental official. Considering the present practice of the department that the prisoners are unaware of being considered for the furlough program until they are accepted or rejected and that those rejected are given only a brief reason for the adverse decision, the proposition is all but obvious that due to the lack of fundamental procedural due process the prisoners are unable to present their side of the story.

The fourth consideration requires us to weigh the governmental interest at stake. The cost of review caused by the procedures is a factor to consider. Now the review is based mainly on the prison records of the inmates, which is an inexpensive procedure. However, giving notice to the inmate and allowing him to present his case to a responsible official would not add greatly to the expense of review. In addition, giving greater procedural protections to inmates would further the governmental interests in another respect. The Legislature found that the prisons are overcrowded and it is desirable to reduce such overcrowding by an earlier release of inmates into the work furlough program. The very same is desirable also for the further reason that by doing so the prisoners may begin their reintegration into society. (§ 6260.) If giving prisoners greater procedural protections results in a greater net placement of prisoners into work furlough, then the governmental interest of reducing prison overcrowding is served. Further, giving prisoners the opportunity to present their case to reviewing officials would serve the social interest in having the most appropriate inmates selected for work furlough. Since the opportunity to hear the inmates' side of the story would give the reviewing officers more information to work with in deciding who is appropriate for the program, they would be more likely to select inmates who are likely to adjust successfully to society and not revert to criminal behavior. The conclusion is thus inescapable that the court's order complies with the fourth factor of the *Ramirez* test inasmuch as the financial burden resulting from the additional procedural safeguards is slight and the increase of procedural protection serves important governmental and social interests. In sum, since the procedural safeguards contained in the court order are fully justified under *Ramirez,* the ruling of the trial court must be upheld as correct.

■ Appellant further argues that the exclusion of level IV inmates from the work furlough program does not violate due process and that the contrary holding of the trial court is erroneous. This contention requires just a brief answer. To begin with, section 6264 mandates that the Department of Corrections must review each inmate individually in order to determine whether he or she is eligible for work furlough. Furthermore, even if the inmate falls within section 6263, which sets out the grounds for exclusion from the program, the Department of Corrections has a discretion to consider unusual circumstances which may render the inmate eligible for the program. In light of the clearly expressed legislative intent which accords the Department of Corrections a discretion in granting or denying participation in the work furlough program we agree with the trial court that "A blanket exclusion of members of a particular category of inmates fails to provide individual consideration required by the statute and cannot constitute a reasonable exercise of discretion as to the individual inmates within these [level III and IV] categories."

For these reasons the order of the trial court must be upheld in its entirety.

The order is affirmed.

Poché, J., and Ballachey, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.