[No. F014127. Fifth Dist. June 6, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF KINGS COUNTY, Respondent;
EUGENE HAMILTON, Real Party in Interest and Respondent.

## COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Morris Lenk and Paul D. Gifford, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Respondent Superior Court.

Michael Satris, under appointment by the Court of Appeal, for Real Party in Interest and Respondent.

## OPINION

### BEST, P. J.—

#### STATEMENT OF THE CASE AND FACTS

Real party in interest and respondent, Eugene Hamilton, a state prisoner, was charged with "battery on a correctional peace officer." Officer R. Ortiz prepared a rules violation report (CDC form 115) charging this offense after Hamilton repeatedly poked Officer Ortiz and then hit the officer on the chest. Correctional Lieutenant Hopkins, as the acting program administrator, reviewed the rules violation report as required by California Code of Regulations, title 15, section 3312, subdivision (e). Lieutenant Hopkins changed the charge to "physical assault on staff" and classified the charge as a "SERIOUS—DIVISION 'B'" rule violation.

Lieutenant Hopkins presided at Hamilton's disciplinary hearing and found Hamilton guilty of the assault charge. She imposed a forfeiture of 150 days of Hamilton's time credits, the maximum days credit loss specified for a serious division B rule violation. (Cal. Code Regs., tit. 15, § 3323, subd. (e).)

Hamilton filed a petition for writ of habeas corpus in the superior court challenging the disciplinary hearing on the ground that he was denied an impartial hearing officer. The trial court granted Hamilton's petition and ordered that the findings made at the disciplinary hearing be set aside. However, the court authorized the prison officials to conduct a new disciplinary hearing on condition that it be held timely and before a neutral and detached official. The Attorney General has appealed the ruling that Lieutenant Hopkins was barred from conducting the disciplinary hearing.

At a rehearing, Hamilton was again found guilty of the assault charge. Nevertheless, both the Attorney General and Hamilton have requested that this case not be dismissed for mootness contending the issue is important and is likely to recur.

■ The court may decide a petition for a writ of habeas corpus even if it becomes moot during its pendency if it involves an issue of important public interest which is likely to recur. (*In re Head* (1983) 147 Cal.App.3d 1125, 1130 [195 Cal.Rptr. 593].) Since this issue affects the right of procedural due process accorded to prisoners, it is of important public interest. (*Ibid.*) The required involvement of supervisory staff members at different stages of

disciplinary proceedings makes it likely this issue will recur. A rules violation report must be reviewed by the reporting employee's supervisor and the disciplinary hearing for a serious rules violation must be conducted by a supervisory staff member who has attained a certain employment level. (Cal. Code Regs., tit. 15, §§ 3312, subd. (e), 3315, subd. (c).) Thus, we deem it appropriate to resolve this issue despite its mootness in the present proceeding.

## DISCUSSION

*Whether the prison official who reviews a rules violation report to classify the charge as either administrative or serious and to correct the report, if necessary, is barred from conducting the disciplinary hearing on that report.*

■ Although a prisoner's rights are diminished, the prisoner is not wholly stripped of constitutional protections when imprisoned for crime. (*Wolff* v. *McDonnell* (1974) 418 U.S. 539, 555 [41 L.Ed.2d 935, 950, 94 S.Ct. 2963].) Prisoners retain rights under the due process clause, including the right to be heard by an impartial disciplinary committee. (*Id.* at pp. 556, 570-571 [41 L.Ed.2d at pp. 959-960].) However, prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. (*Id.* at p. 556 [41 L.Ed.2d at pp. 950-951].)

■ Penal Code section 2932, subdivision (c)(1)(A) requires that a prison disciplinary hearing "be conducted by an individual who shall be independent of the case . . . ." The Department of Corrections has promulgated California Code of Regulations, title 15, section 3320, subdivision (g) to promote this requirement. That regulation provides:

"Employees who reported the rule violation, or who supplied supplemental reports to the rule violation report, or who observed the alleged violation, or investigated the alleged misbehavior or assisted the inmate in preparing for the hearing, or for any other reason have a predetermined belief that the inmate is guilty or innocent will not sit as a fact finder in a disciplinary hearing nor be present while the fact finders are conducting deliberations to decide guilt or innocence and the appropriate disposition if the inmate is found guilty."

This regulation does not specifically disqualify an employee in Lieutenant Hopkins's position, i.e., an employee who reviews the report and classifies the violation before the disciplinary hearing takes place. As noted by the Attorney General, the courts give great deference to the construction of a statute by the administrative body charged with its enforcement and interpretation unless that construction is clearly erroneous or unauthorized. (*In re*

*Semons* (1989) 208 Cal.App.3d 1022, 1028 [256 Cal.Rptr. 641].) The Attorney General argues that, since this regulation was complied with, Hamilton's due process right to an impartial hearing officer was protected and the trial court erred in ruling Lieutenant Hopkins improperly sat as the hearing officer.

Despite the apparent compliance with California Code of Regulations, title 15, section 3320, subdivision (g), the trial court found that Lieutenant Hopkins was not such a neutral and detached person as is required to be the hearing officer because of her participation in reviewing the case. The trial court relied on *Clutchette v. Procunier* (9th Cir. 1974) 497 F.2d 809. The *Clutchette* court, recognizing that the right to be heard by an impartial disciplinary committee is basic to an accused prisoner's constitutional guaranty of an accurate and fair fact-finding determination, stated:

" '[P]ersonal knowledge of, and sometimes bias toward, the inmate defendant, tendency to support staff, and reaction to inmate attitude toward the [disciplinary committee]' may affect the decisions of any prison administrator or staff member sitting on a disciplinary committee. [Citation.] And it is likely that most prison officials will have some awareness of at least the more significant disciplinary problems which have arisen within the institution. *Nevertheless, provided that no member of the disciplinary committee has participated or will participate in the case as an investigating or reviewing officer,* or either is a witness or has personal knowledge of material facts related to the involvement of the accused inmate in the specific alleged infraction (or is otherwise personally interested in the outcome of the disciplinary proceeding), a hearing board comprised of prison officials will satisfy the due process requirement of a ' "neutral and detached" hearing body.' " (*Clutchette v. Procunier, supra,* 497 F.2d 809, 820, italics added.)

The Attorney General argues the court's reference to a "reviewing officer" pertains to the employee who reviews a disciplinary hearing decision, not the employee who undertakes an initial, cursory review of the accuracy and correctness of a misconduct report. However, the *Clutchette* court was merely defining the minimum procedural safeguards that are required in prison disciplinary proceedings. The disciplinary procedure at issue in that case did not include a prehearing review by a supervisor. Thus, the court's language should be read as a general guideline, not a definitive determination of whether a prehearing review disqualifies an employee. As noted by the *Clutchette* court, the requisites of due process vary according to specific factual contexts. (*Clutchette v. Procunier, supra,* 497 F.2d 809, 816.)

In *Meyers v. Alldredge* (3d Cir. 1974) 492 F.2d 296, relied on in part by *Clutchette v. Procunier, supra,* 497 F.2d 809, the court set forth its parameters for a neutral disciplinary committee as follows:

"[W]e emphasize that the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body. This would normally include only those such as the charging and the investigating staff officers who were directly involved in the incident. It would not include those who are only tangentially affected by the alleged misconduct, such as prison officials who may have some administrative connection with such misconduct prior to hearings." (*Meyers* v. *Alldredge, supra*, 492 F.2d at p. 306, fn. omitted.)

Again, in *Meyers* v. *Alldredge, supra*, the court was not evaluating a disciplinary hearing procedure which included a prehearing review such as the one required by California Code of Regulations, title 15, section 3312. Similarly, in the Florida cases relied on by the Attorney General, there is no indication of the existence of any prehearing review and evaluation. (*Myers* v. *Askew* (Fla.Dist.Ct.App. 1976) 338 So.2d 1128; *Piccirillo* v. *Wainwright* (Fla.Dist.Ct.App. 1980) 382 So.2d 743.) Thus, the authorities relied on by the parties do not specifically address the issue here. This court must therefore determine whether, by virtue of reviewing a rules violation report, correcting the report to reflect the proper charge, and classifying the violation as administrative or serious, Lieutenant Hopkins directly and substantially participated or only tangentially participated in the case before the hearing.

The Attorney General characterizes Lieutenant Hopkins's involvement as administrative. The Attorney General argues that *United States* ex rel. *Silverman* v. *Com. of Pa.* (W.D.Pa. 1981) 527 F.Supp. 742 supports this position. There, the court held that a correctional officer who signed a misconduct report while on duty was not disqualified from participating as a member of the disciplinary committee. (*Id.* at p. 749.) An administrative directive required that misconduct reports be signed by the ranking officer on duty. However, there was no indication that the correctional officer had any input except for signing the report. The court noted the officer did not sign the misconduct report as the " 'staff member reporting misconduct.' " (*Ibid.*)

In contrast here, Lieutenant Hopkins was required to evaluate the report to assure that the proper charge was reflected and to classify the violation as serious or administrative. This review put Lieutenant Hopkins in a prosecutorial role, i.e., a decisionmaking role in connection with the charging. Also, by making corrections to the rules violation report, Lieutenant Hopkins became involved in reporting the rule violation. Such an active role in preparing the rules violation report must be characterized as a substantial involvement in the circumstances underlying the charge. Thus, despite

Lieutenant Hopkins's apparent compliance with California Code of Regulations, title 15, section 3320, subdivision (g), due process required that she be disqualified from hearing this case.

## DISPOSITION

The order is affirmed.

Martin, J., and Thaxter, J., concurred.

A petition for a rehearing was denied June 28, 1991, and appellant's petition for review by the Supreme Court was denied August 22, 1991.