[No. F058189. Fifth Dist. Apr. 12, 2012.]

In re JOHN FRATUS on Habeas Corpus.

COUNSEL

Susan L. Jordan, under appointment by the Court of Appeal, for Petitioner John Fratus.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Jessica N. Blonien and Michael G. Lagrama, Deputy Attorneys General, for Respondent State of California.

OPINION

FRANSON, J.—

## INTRODUCTION

Petitioner John Fratus was found guilty following a disciplinary hearing for battery of a correctional officer in 2006. He filed a petition for writ of habeas corpus in this court in 2008, alleging he did not have a fair hearing because he had not been allowed to call a friendly witness and had not been permitted to cross-examine the prison officers who testified against him at the disciplinary hearing. This court issued an order directing the Department of Corrections and Rehabilitation (the Department) to "show cause before the Kings County Superior Court . . . why petitioner is not entitled to appropriate relief." In February 2009, the superior court denied the petition for writ of habeas corpus. Although the superior court found that the Department had violated its own regulation, which permitted an inmate at a disciplinary hearing to "ask questions of all witnesses called" (Cal. Code Regs., tit. 15, § 3315, subd. (e)(5)), it found the error harmless.

Fratus then filed the current petition for writ of habeas corpus in this court in August 2009. Again, he contends he was denied his right to call a friendly witness and to cross-examine witnesses at his disciplinary hearing. In addition, based on his inability to fully present his case, he contends there was insufficient evidence to support the guilty finding. This court again issued an order to show cause, but returnable to this court. As we shall explain, because the Department has conceded that Fratus was permitted to ask only one question of each of the four officer witnesses who gave evidence against him, we agree with the superior court that the Department violated its own regulation allowing an inmate to ask relevant questions of all witnesses called. But unlike the superior court, we do not view the error as harmless. We also conclude the Department, in this case, violated Fratus's due process right to call witnesses in his defense and the Department's own regulation to question all witnesses. Accordingly, we grant the petition for a writ of habeas

corpus and direct the Department to either restore to Fratus the 121 days of good-time behavior credits he lost as a consequence of the Department's finding that he had committed a battery upon a correctional officer or conduct a new disciplinary hearing consistent with this opinion.

## BACKGROUND FACTS AND ADMINISTRATIVE PROCEEDINGS

At the time of the alleged incident and disciplinary hearing, Fratus was serving time for a 2005 conviction of shooting into an inhabited dwelling (Pen. Code, § 246)[1] and assault with a firearm (§ 245, subd. (a)(2)). He was later convicted in 2008 of "gassing" a peace officer (§ 4501.1, subd. (a)) and in 2009 of obstructing/resisting an officer (§ 69). For these offenses, he is serving a total prison term of 44 years and therefore is in the lawful custody of the Department.

On July 18, 2006, prison officials issued Fratus a disciplinary rules violation report for battery on a peace officer, which allegedly occurred on July 12, 2006. The Department's account of the incident differs drastically from petitioner's account.

According to the Department, Correctional Officers Hamilton and Solano were escorting Fratus from his cell to an outdoor exercise module. Fratus was very agitated, used profanities, and was resistant toward the escorting officers, so Sergeant Robertson counseled Fratus about his improper behavior. Fratus then head-butted Hamilton on the left side of Hamilton's face. Hamilton and Solano forced Fratus to the ground to subdue him. Officer Cortez relieved Officer Hamilton and assisted Officer Solano in escorting Fratus back to his cell. Fratus attempted to spit on, trip, and lunge at Officer Cortez, requiring the officers to force Fratus to the ground two more times in order to subdue him.

Fratus asserts that the Department's account of the incident is false, and that the Department fabricated the event to conceal an unprovoked beating of him by correctional officers. He contends that the alleged beating was inflicted because he had recently been transferred to Corcoran from another prison, and the Corcoran correctional officers were aware that he had "write-ups for masturbating in [his] cell and indecent exposure in front of female prison staff/officers" at the other prison. Fratus contends that shortly before the alleged beating Officer Solano told him, "welcome to Corcoran, you're gonna see what we do at Corcoran, you like to jack off in front of women?"

---

[1] All further statutory references are to the Penal Code unless noted otherwise.

Before his disciplinary hearing in August 2006, Fratus received the services of an investigative employee (the investigator), whose duties were to act as a fact finder for the senior hearing officer (SHO) who would preside over the disciplinary hearing. In compliance with Fratus's requests, the investigator interviewed or attempted to obtain statements from four correctional officers involved in the incident and 17 inmates who were housed in cells in that area on July 12. Fifteen of the 17 inmates refused to give statements. One said, "I don't know anything." The remaining inmate, Herman Johnson, gave a statement supportive of Fratus. The investigator's report describes Johnson's statement as follows: "I saw Inmate Fratus being escorted to the yard. The next thing I know he was being slammed to the ground and the Correctional Officer lied on Fratus and said he tried to assault them. That was their reason for slamming him to the ground. I saw the entire thing. Fratus did not make any moves or anything of that nature. The C/O's are lying so they can justify why they beat him up. Then as they were walking him out of the cages they threw him down to the ground again and kicked him in the face multiple times. And again they kicked him some more." Fratus timely received a copy of the investigator's report before his August 23, 2006, disciplinary hearing.

The investigator's report also included statements taken from four officers involved in the July 12 incident: Officer E. Hamilton (the alleged victim of the July 12 head-butting), Sergeant D. Robertson, Officer R. Cortez, and Officer R. Solano. Those statements appear to be in accord with the Department's account of the incident as described above. Hamilton's statement also adds that after Fratus head-butted him and after Fratus attempted to trip Cortez and was taken to the ground a second time, an Officer R. Ortega placed leg irons on Fratus. Hamilton's statement also adds that after Fratus lunged at Cortez and was taken to the ground for the third and final time, an Officer K. Elze relieved Officer Solano, and Elze and Solano placed Fratus into a holding cell.

The SHO denied Fratus's request for the presence of inmate Johnson at the disciplinary hearing, concluding that Johnson's live testimony would not provide any additional or relevant information beyond what was contained in his earlier statement to the investigator, quoted above. The SHO granted Fratus's request to have five custodial officers testify, but Fratus later waived his right to call Officer Solano at the hearing, after Solano was apparently unavailable to appear. He entered a plea of not guilty and stated: "I did not assault anyone. I was the one who was assaulted." Officer Hamilton, Sergeant Robertson, Officer Cortez and Officer Elze were questioned at the hearing.

The SHO's report describes the live testimony given at the hearing by these officers, in response to questions posed by the SHO:

"The following questions were asked of Officer Hamilton:

"Q1) Were you one of the escorting officers?

"A1) Yes.

"Q2) Did this incident occur outside, or inside the exercise module?

"A2) Outside.

"Q3) Did you witness Inmate Fratus head butt Correctional Officer Hamilton?

"A3) Yes, right at the door of the exercise module.

"The following questions were asked of Correctional Sergeant Robertson:

"QA) Were you one of the escorting officers?

"A1) No.

"Q2) Did this incident occur outside, or inside the exercise module?

"A2) When I responded to the scene, Inmate Johnson was basically inside the module.

"Q3) Did you witness Inmate Fratus head butt Correctional Officer Hamilton?

"A3) No.

"The following questions were asked of Officer Cortez:

"Q1) Were you one of the escorting officers?

"A1) Yes.

"Q2) Did this incident occur outside, or inside the exercise module?

"A2) In front of exercise module.

"Q3) Did you witness Inmate Fratus head butt Correctional Officer Hamilton?

"A3) Yes.

"The following questions were asked of Officer Elze:

"Q1) Were you one of the escorting officers?

"A1) Yes.

"Q2) Did this incident occur outside, or inside the exercise module?

"A2) I did not observe where the incident occurred.

"Q3) Did you witness Inmate Fratus head butt Correctional Officer Hamilton?

"A3) No."

In addition to this live testimony, and written reports of the incident prepared by the investigator, the SHO considered medical reports showing injuries to Fratus and to Officers Hamilton, Solano and Cortez. The report pertaining to Fratus documents minor cuts, abrasions and reddened areas at various points on his body, including his head, wrists, arms and knees. It describes him as displaying "bizarre behavior," being a "danger to others" and a "danger to self," and as saying, "take these cuffs off so I can kill all you guys." (Some capitalization omitted.) The report for Hamilton (the alleged head-butt victim) describes a bruised and discolored area, and pain, on the left side of his head, and a statement by Hamilton to his examiner that, "I was head butted and struck on the left side of my mouth." (Some capitalization omitted.) The reports for Solano and Cortez describe various abrasions and bruises.

The SHO found Fratus guilty of battery on a peace officer and assessed a penalty of a forfeiture of 150 days of credit. This was later reduced to 121 days "in the interest of justice and [petitioner's] mental health."

Fratus then filed an inmate appeal (602 appeal) contending that his disciplinary hearing was unfair because he had not been permitted to call inmate Johnson as a witness (Johnson) or question the prison officers who testified at the hearing.

### HABEAS CORPUS PETITIONS

■ "Habeas corpus may be sought by one lawfully in custody for the purpose of vindicating rights to which he is entitled while in confinement."

(*In re Arias* (1986) 42 Cal.3d 667, 678 [230 Cal.Rptr. 505, 725 P.2d 664].) After his 602 appeal was denied at the director's level, Fratus filed his first petition for writ of habeas corpus in this court in 2008, alleging he did not have a fair disciplinary hearing because he had not been allowed to call Johnson as a witness and had not been permitted to cross-examine the prison officers who testified against him.[2]

This court issued an order directing the Department to show cause, before the Kings County Superior Court, why Fratus was not entitled to appropriate relief and to conduct further proceedings pursuant to California Rules of Court, rule 4.551. Pursuant to our order, the superior court appointed counsel for Fratus. The Department's return and Fratus's traverse were filed in superior court.

The superior court, concluding that an evidentiary hearing was not required to determine the matter, denied the petition by written order dated February 17, 2009. The superior court ruled that exclusion of inmate Johnson's live testimony was allowed under California Code of Regulations, title 15, section 3315, subdivision (e)(1)(B), as inmate Johnson could not provide any additional information beyond that provided in the investigator's interview, which was considered as evidence by the SHO.[3] The court also assumed the SHO properly denied Johnson's appearance "based on safety and security concerns."

The superior court also ruled that: "While petitioner may not have an all inclusive federal constitutional right to cross-examine disciplinary hearing witnesses, he does have a limited state right under [California Code of Regulations, title 15,] [s]ection 3315, subdivision (e)(5) to ask *relevant* questions of all witnesses called. In this case, by issuing an almost blanket denial of such right to Petitioner without any consideration as to the relevancy of Petitioner's intended questions, the senior hearing officer failed

---

[2] This petition included information not mentioned in Fratus's 602 appeal—that the SHO limited him to only one question of each of the correctional officers at the hearing. According to Fratus, the question was written down and read to each officer by the SHO: "Did this incident happen inside or outside the exercise module?" This question was the second one asked of each officer at the hearing. Fratus was apparently alleging that some of the officers went against department policy by entering the exercise module.

[3] Many of the rights afforded to inmates by California Code of Regulations, title 15, section 3315 are also found in Penal Code section 2932, which prescribes procedures to be utilized by the Department "after the discovery of information leading to charges that may result in a possible denial of credit . . . ." (§ 2932, subd. (c)(1)(A).) Subdivision (c)(3) of section 2932 states: "The prisoner may request witnesses to attend the hearing and they shall be called unless the person conducting the hearing has specific reasons to deny this request. The specific reasons shall be set forth in writing and a copy of the document shall be presented to the prisoner." Subdivision (c)(4) of the statute states: "The prisoner has the right, under the direction of the person conducting the hearing, to question all witnesses."

to comply with the recognized procedural requirements set forth in California Code of Regulations, title 15, [s]ection 3315, subdivision (e)(5)." (Original italics.) The trial court essentially concluded that Fratus was deprived of the ability to present his defense to the head-butting battery allegation involving Officer Hamilton. However, the court concluded that there was sufficient evidence in the record, with some indicia of reliability, to support a battery conviction based on the tripping of Officer Cortez, and therefore concluded that the error in precluding Fratus's defense of the Hamilton accusations was harmless.

Fratus then filed the current (F058189) petition for writ of habeas corpus in this court in August 2009, essentially repeating the allegations of the first petition that he was denied his right to call Johnson as a witness and question department witnesses at his disciplinary hearing. He also challenged the sufficiency of the evidence. This court again issued an order to show cause, this time returnable before this court. The Department's return and Fratus's traverse were filed and the matter is now before us.

## DISCUSSION

The United States Supreme Court has addressed these issues. In *Wolff v. McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963] (*Wolff*), an inmate was sanctioned a loss of "good-time credits" in a prison disciplinary proceeding, similar to this case. The court acknowledged that prison inmates are protected by the due process clause of the Fourteenth Amendment to the United States Constitution, but explained the realities of the prison setting: "[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." (*Wolff, supra,* 418 U.S. at p. 556.)

"Prison disciplinary proceedings . . . take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law . . . . Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner. [¶] It

is against this background that disciplinary proceedings must be structured by prison authorities; and it is against this background that we must make our constitutional judgments, realizing that we are dealing with the maximum security institution as well as those where security considerations are not paramount. The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process." (*Wolff, supra*, 418 U.S. at pp. 561–562.)

### The Right to Call Witnesses

■ With this backdrop, the court held that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." (*Wolff, supra*, 418 U.S. at p. 566.) This was later affirmed in *Superintendent v. Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 105 S.Ct. 2768] (*Hill*) (see *In re Rothwell* (2008) 164 Cal.App.4th 160, 165 [78 Cal.Rptr.3d 723]).[4]

Fratus was therefore entitled under the due process clause, as interpreted in *Wolff* and recognized in *Hill*, to "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense" (*Hill, supra*, 472 U.S. at p. 454). We conclude that this opportunity was not afforded to Fratus at his disciplinary hearing. There is no issue here involving Fratus's right to present documentary evidence, since he offered none. The issue is his "opportunity, when consistent with institutional safety and correctional goals, to call witnesses . . . in his defense." (*Ibid.*) In our view, the SHO's refusal to allow Fratus to call inmate Johnson as a witness, for the reasons stated in his report of the disciplinary hearing (he "could not provide any additional/relevant information"), was a violation of the due process right recognized in *Wolff* and *Hill*.

■ In addition, the SHO's decision to not allow Fratus to call inmate Johnson as a friendly witness was also a violation of one of the Department's own rules. California Code of Regulations, title 15, section 3315 pertains to

---

[4] The court in *Wolff* also concluded that confrontation and cross-examination of adverse witnesses in a prison disciplinary proceeding was not constitutionally required. (*Wolff, supra*, 418 U.S. at pp. 567–568.)

the handling of "serious" disciplinary offenses, such as the battery alleged here. Failure to follow these regulations may result in the denial of procedural due process afforded to prisoners. (*People v. Superior Court (Hamilton)* (1991) 230 Cal.App.3d 1592, 1594 [281 Cal.Rptr. 900].) Subdivisions (c) through (f) of California Code of Regulations, title 15, section 3315 pertain to the procedure for and disposition of the inmate's hearing on the alleged serious disciplinary offense. Subdivision (e), relied upon by the SHO in this matter, states:

"(e) Witnesses. An inmate may request that friendly and adverse witnesses attend the hearing.

"(1) Requested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons:

"(A) The appearance would endanger the witness.

"(B) The official determines that the witness has no relevant or additional information.

"(C) The witness is unavailable.

"(2) If an inmate's request for a witness is denied, the reasons shall be documented on the CDC Form 115.

"(3) Whether or not the inmate requests a witness, witnesses may be called if the official conducting the hearing determines the witnesses may have information necessary to the finding of fact.

"(4) The reporting employee shall attend the disciplinary hearing or be available for questioning via speakerphone if requested by the inmate.

"(5) Under the direction of the official conducting the disciplinary hearing, the inmate has the right to ask questions of all witnesses called. The SHO will screen all questions to ensure they are relevant to the violation charged.

"(6) Nothing in this section shall preclude making a witness available by speaker phone for a disciplinary hearing." (Cal. Code Regs., tit. 15, § 3315, subd. (e).)

Fratus's request to call inmate Johnson as a "friendly" witness at the disciplinary hearing was denied on the authority of California Code of Regulations, title 15, section 3315, subdivision (e)(1)(B) above. The SHO's report stated he "elected to deny Subjects [*sic*] request for the presence of

Inmate Johnson per CDC § 3315 (e)(1), as Inmate Johnson could not provide any additional/relevant information than that which was provided during the [investigator's] interview." The SHO was required by section 3315, subdivision (e)(2) to document on his report the "reasons" for denying Fratus's request to call Johnson as a witness. The above quoted reason was the only one mentioned in the SHO's report. No safety or correctional issues were noted.

 It seems clear from the investigator's report that Johnson had "relevant" information. According to that report, Johnson said: "I saw the entire thing. Fratus did not make any moves or anything of that nature. The C/O's are lying so they can justify why they beat him up." A prison disciplinary hearing is not a court trial, and the rules of evidence thus do not apply (see Evid. Code, § 210 for the Evid. Code's definition of "relevant evidence"), but the commonly understood meaning of the word "relevant" is "bearing upon or relating to the matter in hand; pertinent; to the point." (Webster's New World Dict. (2d college ed. 1982) p. 1199.) The officers contended that Fratus head-butted Officer Hamilton. Johnson's story was that Fratus did not do so, and that the officers "are lying so they can justify why they beat him up." Under the commonly understood meaning of the word "relevant," Johnson had relevant information.

Also, if the SHO denied Fratus's request to call the "friendly" witness Johnson because Johnson had no "additional information" beyond what had been presented to the SHO in the investigator's report, then (disregarding the fact that the SHO's report contains no explanation as to how he reached such a conclusion) we fail to see why the SHO did not reach the same conclusion as to Officers Hamilton and Cortez, who did give live testimony at the disciplinary hearing and who were permitted to state, in person at the disciplinary hearing, what they had stated in their written reports—that Fratus had head-butted Hamilton.

 As we have stated, we fail to see how the refusal to permit Johnson to testify in person at the disciplinary hearing could be deemed to comply with the due process right described in *Wolff* and in *Hill*. If Fratus has a right "when consistent with institutional safety and correctional goals, to call witnesses . . . in his defense" (*Hill, supra*, 472 U.S. at p. 454), and if he was not permitted to call a friendly witness, then he was denied due process unless the refusal to hear the friendly witness would be inconsistent with institutional safety or correctional goals. The documented reason for refusing to permit Johnson to appear at the hearing had nothing to do with institutional safety or correctional goals. The assertion that Johnson had no relevant information was not accurate. Johnson had relevant information, and preventing the presentation of relevant testimony at a disciplinary hearing is not a

"correctional goal." Because the refusal to permit Johnson to testify was not based upon any concern for institutional safety or in furtherance of any legitimate correctional goal, we conclude that it was a violation of Fratus's right to due process of law.

### The Right to Ask Questions

Although Fratus did not have a constitutional right to cross-examine adverse witnesses at his disciplinary hearing (see fn. 4, *ante*), the refusal of the SHO to allow Fratus to ask more than one question of the prison officers is a violation of subdivision (e)(5) of California Code of Regulations, title 15, section 3315, as the superior court concluded. Fratus's first petition, like the present one, alleged that the SHO told Fratus "that he would allow me to ask 'one' question to each of the adverse witnesses, and that he . . . would write down my one question . . . and he would ask it to them for me." Until oral argument, the Department never denied that the SHO limited Fratus's questioning of Officers Hamilton, Cortez and Elze, and of Sergeant Robertson, to one question, and did not appear to contend that such a limitation is justifiable under the regulation. "Any material allegation of the petition not controverted by the return is deemed admitted for purposes of the proceeding." (Cal. Rules of Court, rule 4.551(d).) Instead, the Department attempted to argue that Fratus failed to exhaust his administrative remedies because he failed to assert in his initial administrative appeal that he was denied the right to question or cross-examine the prison officers at his hearing. This is not correct. His 602 appeal stated he "was not allowed to question/cross-examine the adverse witnesses . . . ." The director's level decision confirms his allegation.

The superior court's conclusion that the error in failing to allow additional questions of the prison officers was harmless was based upon its assumption that the battery finding could be upheld on the basis that the evidence of Fratus's attempt to trip Officer Cortez was a battery. We reject this for two reasons. First, the Department has conceded that appellant was charged with a battery on Hamilton (i.e., the alleged head-butting) and not on Cortez, and this concession of lack of proper notice is well taken. Second, even if we could reasonably construe the disciplinary charge against Fratus as a battery upon Officer Cortez, which we cannot, Fratus was still not permitted to ask more than one question, about anything, at his disciplinary hearing.

Because Fratus was denied his right to present his defense at the disciplinary hearing, as mandated under the due process clause and allowed under the Department's regulations, and thus denied a fair hearing, we do not know the evidence which would have come from the testimony of inmate Johnson or the questions asked of the prison officers. Without this evidence, we cannot

evaluate the sufficiency of the evidence issue at this time, or whether the failure to allow questioning of the prison officers was harmless error. (See *Piggie v. Cotton* (7th Cir. 2003) 344 F.3d 674, 679.) We do note however, that an error may not be deemed harmless when such an error "undermine[s] confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

## DISPOSITION

The petition for a writ of habeas corpus is granted and the Department is directed to either restore to petitioner the 121 days of good-time behavior credits he lost as a consequence of the Department's finding that he had committed a battery upon a correctional officer or conduct a new disciplinary hearing consistent with the holdings in this opinion.

Dawson, Acting P. J., and Kane, J., concurred.