Filed 8/2/21  In re Thompson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re DONNELLY THOMPSON on Habeas Corpus. | C092896 (Super. Ct. No. 19HC00394) |

The People appeal the superior court's order granting inmate Donnelly Thompson's petition for a writ of habeas corpus.  Relying on *In re Fratus* (2012) 204 Cal.App.4th 1339 (*Fratus*), the superior court found the disciplinary hearing officer's denial of Thompson's request to call a friendly witness violated Thompson's due process rights and granted the writ of habeas corpus.  We affirm.

BACKGROUND

Thompson and inmate Moore shared a cell.  While Thompson was out of the cell, correctional officer Curry saw Moore using a cell phone while sitting on the lower bunk, the bunk assigned to Thompson.  Curry ordered Moore out of the cell, and saw Moore

1

hide the phone inside a television. The television had a cell phone sized cutout behind the display. The television was marked as belonging to Thompson. During a search of the cell, Curry also found a cell phone charger on the lower bunk. Curry filed a rules violation report against Thompson for unauthorized possession of a cell phone. (Cal. Code Regs., tit. 15, § 3006, subd. (a).)

At the disciplinary hearing, Thompson denied the phone was his. He also stated he had left the cell to go to a visit and his television was not altered when he left the cell. Thompson provided a "handwritten note," apparently written by Moore, purporting to be a "115 AFFIDAVIT" that stated, "I . . . was approached by an officer. And I put my cell phone inside my cellmate's television. I altered my cellmate's television without him knowing and when the officer approached me, I attempted to hide the cell phone inside the television. My cellmate was at [a] visit and was not aware that I had altered the television or that I had a cell phone inside the cell. Signature, DXM." Thompson requested Moore be called as a witness. The hearing officer "determined the witness [had] no relevant or additional information" and denied the request. The hearing officer considered Thompson's statements and the note "that appeared to be authored by MOORE," but found it "unreasonable to believe MOORE would break open THOMPSON's television, and cut a rectangle hole in it, just to hold a cell phone belonging to MOORE. It is more reasonable to believe MOORE was using the cellphone that belonged to THOMPSON, as the phone was found in THOMPON's television and the cell phone charger was found on THOMPSON's bunk." Accordingly, the hearing officer found Thompson guilty of possession of a cell phone by a preponderance of the evidence.

Thompson exhausted his administrative remedies and then filed a petition for writ of habeas corpus in the superior court. Thompson alleged the hearing officer's denial of his request for Moore to testify at the hearing violated his due process rights. The superior court issued an order to show cause directing the parties to address whether,

2

under the authorities of *Wolff v. McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935] (*Wolff*), *Fratus, supra*, 204 Cal.App.4th 1339, and California Code of Regulations, title 15, section 3315, subdivision (e), the due process clause entitled Thompson to have his cellmate attend his disciplinary hearing. The superior court concluded this case was "virtually indistinguishable from *Fratus*," which concluded it was a violation of the petitioner's due process rights to refuse to permit him to call a friendly witness with relevant information when doing so would not be hazardous to institutional safety or goals. Accordingly, the superior court granted the petition for writ of habeas corpus, vacated the loss of custody credits imposed for the rule violation, and ordered a new disciplinary hearing be held.

DISCUSSION

The People contend, as they did in the superior court, that the hearing officer's exclusion of Moore as a witness for Thompson did not violate his due process rights. Specifically, the People contend Moore's testimony would have been cumulative, no more than a repetition of the statements in the affidavit, and that the request was denied based on the legitimate penological interest of keeping disciplinary hearings manageable in light of other administrative burdens.

Generally, "we review the grant of a writ of habeas corpus by applying the substantial evidence test to pure questions of fact and de novo review to questions of law." (*In re Taylor* (2015) 60 Cal.4th 1019, 1035.) Thus, in this case we review the constitutional determination de novo, while reviewing any factual findings of the court for substantial evidence.

The due process clause protects prisoners from being deprived of liberty without due process of law. (*Wolff, supra*, 418 U.S. at p. 556.) However, prison inmates do not share the same panoply of constitutional rights protecting individuals from criminal prosecution or revocation of parole or probation. (*Id.* at pp. 555-556, 560-563.) Rather, the due process protections to be afforded a prison inmate must be balanced against

3

weighty considerations associated with prison administration and rehabilitative reform efforts.  (*Id.* at pp. 556, 561-563; *Superintendent, Massachusetts Correctional Institution v. Hill* (1985) 472 U.S. 445, 454-455 [86 L.Ed.2d 356, 364] ["in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation"].)

The procedural protections required by *Wolff* in a disciplinary proceeding include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex.  (*Wolff, supra*, 418 U.S. at pp. 564-570; *Wilson v. Superior Court* (1978) 21 Cal.3d 816, 825-826.)  *Wolff* acknowledged the opportunity to call witnesses was not absolute, but could be limited to those instances "when permitting [the inmate] to do so will not be unduly hazardous to institutional safety or correctional goals."  (*Wolff*, at p. 566.)

The Fifth Appellate District applied the *Wolff* requirements in *Fratus, supra*, 204 Cal.App.4th 1339.  In *Fratus*, prison officials issued a disciplinary rules violation report alleging Fratus had battered correctional officers.  Fratus denied the allegations and claimed the event was fabricated to cover up an unprovoked attack on him.  (*Id.* at p. 1342.)  Before the disciplinary hearing, an investigative employee interviewed a number of officers and inmate witnesses.  One of those inmate witnesses, Johnson, stated he had witnessed the event, that Fratus had not battered the correctional officers, and the correctional officers were lying to justify the beating.  (*Id.* at p. 1343.)  The investigative report also included statements from the officers involved in the incident, which were consistent with their incident report.  (*Ibid.*)  At the disciplinary hearing, Fratus requested the presence of Johnson.  The hearing officer denied the request, concluding that Johnson's live testimony would not provide any additional or relevant information

4

beyond what was contained in his earlier statement to the investigator. (*Ibid.*) Four of the five officers involved in the incident testified at the hearing. (*Ibid.*) The hearing officer found Fratus guilty of battery on a peace officer and assessed a penalty of loss of credit. (*Id.* at p. 1345.) After exhausting his administrative remedies, Fratus filed a writ of habeas corpus in the superior court. The superior court issued an order to show cause, and ultimately concluded that "exclusion of inmate Johnson's live testimony was allowed under California Code of Regulations, title 15, section 3315, subdivision (e)(1)(B), as inmate Johnson could not provide any additional information beyond that provided in the investigator's interview, which was considered as evidence by the [hearing officer]. The court also assumed the [hearing officer] properly denied Johnson's appearance 'based on safety and security concerns.' " (*Fratus,* at p. 1346, fn. omitted.) Fratus then petitioned for relief in the appellate court. (*Id.* at p. 1347.)

Relying on *Wolff,* the Fifth Appellate District concluded the refusal to allow Fratus to call a friendly witness on the grounds that the witness " 'could not provide any additional/relevant information" was a violation of the due process right recognized in *Wolff* and *Hill*; that is, " 'an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense.' " (*Fratus, supra*, 204 Cal.App.4th at p. 1348.) The *Fratus* court also concluded the refusal violated Fratus's due process, as it was a violation of the California Department of Corrections and Rehabilitation's own rules (*id.* at p. 1348), that the request of an inmate for the appearance of a friendly witness shall be granted, unless: " '(A) [t]he appearance would endanger the witness[;] [¶] (B) [t]he official determines that the witness has no relevant or additional information[;] [¶] [or] (C) [t]he witness is unavailable.' " (*Fratus*, at p. 1349, citing Cal. Code Regs., tit. 15, § 3315, subd. (e)(1)(A)-(C).) The court noted Johnson's evidence was clearly relevant, as he stated he had witnessed the entire incident. (*Fratus*, at p. 1350.) And, in assessing whether the error was harmless, the court noted it

5

could not know what evidence would have come from the testimony of inmate Johnson. (*Id.* at pp. 1351-1352.)

We conclude, as did the superior court, this case is "virtually indistinguishable from *Fratus.*" Here, as in *Fratus*, Moore's testimony was clearly relevant. He was Thompson's cellmate, he was the person seen using the phone while sitting on Thompson's bunk where the charger was found, and he put the phone in the television. He claimed the phone was his, he had altered Thompson's television without Thompson knowing, and Thompson was unaware he had the phone. The hearing officer specifically discounted the credibility of the note "apparently" from Moore, finding its claims unreasonable. Live testimony might have provided additional information specifically related to assessing the credibility of Moore's assertions. And, as in *Fratus,* there is no explanation of how the hearing officer determined Moore had no additional information. (*Fratus, supra*, 204 Cal.App.4th at p. 1350.) It does not appear Thompson was asked at the hearing what, if any, additional information Moore could provide.[1] It is not beyond conception that Moore could have provided additional information on the details of his possession of the phone, and alteration of the television, and Thompson's lack of knowledge, including when he got the phone and altered the television, how he did it, and how he did it without Thompson knowing about it. Thus, neither we nor the hearing officer can know from the record at the hearing whether Moore had additional information.

---

[1]	The People claim Thompson did not explain what additional evidence Moore could have provided. Thompson was not asked by the hearing officer to provide such an explanation. Rather, in one of his administrative appeals he was "provided an opportunity to present any additional information relative to his appeal." Thompson replied, " '[T]hat's pretty much it, my cellie has taken responsibility for it.' " This statement is not inconsistent with the possibility that Moore could have provided additional information.

Nor are we persuaded by the People's claims of other "[l]egitimate penological interests" supporting the denial of the request for Moore to testify. The cases the People rely on to support this argument are distinguishable.

*Ramer v. Kerby* (10th Cir. 1991) 936 F.2d 1102 (*Ramer*) and *Forbes v. Trigg* (7th Cir. 1992) 976 F.2d 308 (*Forbes*) both involve the validity of blanket policies that violated the inmate's due process rights by either preventing inmates from calling staff members as witnesses or allowing staff members to refuse to testify without explanation. In both cases, the court rejected the blanket policy as violative of due process. (*Ramer, supra*, at p. 1104; *Forbes, supra*, at p. 317.) There is no such blanket policy at issue in this case.

Without discussing any particular witnesses or evidence, *Ramer* noted the general proposition that decisions should be made on a case-by-case basis by "legitimate penological concerns," such as "safety or correctional goals, expense, staffing requirements throughout the institution, and the danger of harassment," and that the request should be "denied if officials affirmatively determine the staff members' testimony would be irrelevant, cumulative, or otherwise unnecessary for the committee to come to a fair resolution of the matter." (*Ramer, supra*, 936 F.2d at p. 1104; *Forbes, supra*, 976 F.2d at p. 317.) In the abstract, we have no objection to that general statement, but find it analytically unhelpful to the resolution of this case.

*Forbes* found the blanket policy as applied to the inmate had not violated his due process rights, as the proffered witnesses were not involved in the disciplinary incident and would provide testimony on the existence and validity of the violated rule, an issue not relevant to the issue to be decided by the hearing board. (*Forbes, supra*, 976 F.2d at pp. 310-311, 318.) Unlike in *Forbes*, Moore was directly involved in the incident, and his testimony was directly relevant to the issue before the hearing officer, whether Thompson possessed the phone and he could have provided additional information necessary to resolve the matter.

In *Malek v. Camp* (8th Cir. 1987) 822 F.2d 812, the disciplinary committee denied the inmate's request to have 13 additional witnesses testify consistent with his live testimony on the grounds it was not necessary to resolve the conflict and would cause undue delay. The court upheld the denial as consistent with due process, given the penological need for swift discipline. (*Id.* at p. 815.) Here, Thompson sought the live testimony of only one witness, and there was no indication of any concern of undue delay stemming from that request.

In *Brown v. Braxton* (4th Cir. 2004) 373 F.3d 501, the inmate, Brown, was housed in a maximum security facility and got in a fight with another inmate, Beavers. (*Id.* at pp. 502-503.) Brown's request to have Beavers, the victim of the charged aggravated assault, called as a live witness was denied. (*Id.* at p. 503.) The court upheld the denial as consistent with due process given the penological needs to prevent retaliation or forceful coercion of other inmates and the substantial burdens and disruptions involved in moving maximum security inmates around. (*Id.* at pp. 506-508.) There were no such concerns indicated here, the charge at issue here was not violent, Moore was not a victim of Thompson, and there is no indication in the record of any significant administrative burdens or risks of reprisal in having Moore give live testimony.

We do not question the validity of the penological interests protected in those cases. They simply are not present in this case. The hearing officer was required to document on his report the "reasons" for denying Thompson's request to call Moore as a witness. (Cal. Code Regs., tit. 15, § 3315, subd. (e)(2).) The only reason given was Moore had no relevant or additional information. No safety issues, correctional goals, or other legitimate penological interests issues were noted.

We conclude the refusal to permit Moore to testify violated Thompson's due process rights, as explained in *Wolff* and *Fratus*. Moore's testimony was relevant and could have provided additional information. There were no penological interests identified that would have outweighed Thompson's due process right to call a friendly

8

witness. Because the refusal to permit Moore to testify was not based upon any concern for institutional safety or in furtherance of any legitimate penological goal, we conclude that it was a violation of Thompson's right to due process of law. (*Fratus, supra*, 204 Cal.App.4th at p. 1351.)

## DISPOSITION

The order granting defendant's writ of habeas corpus is affirmed.


        KRAUSE       , J.


We concur:


     RAYE      , P. J.


     HOCH      , J.